Stephen L. Pevar
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
330 Main Street, First Floor
Hartford, Connecticut  06106
(860) 570-9830

Richard Alan Eppink
reppink@acluidaho.org
AMERICAN CIVIL LIBERTIES UNION
OF IDAHO FOUNDATION
P.O. Box 1897
Boise, Idaho  83701
(208) 344-9750 ext. 206
Idaho State Bar no. 7503

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOSHUA KELLY, *et al.*,<br><br>                    Plaintiffs,<br>     v.<br><br>TIMOTHY WENGLER, *et al.*,<br><br>                    Defendants. | Case No.: 1:11-cv-00185-EJL<br><br>**PLAINTIFFS' MOTION TO UNSEAL** |

Plaintiffs recently filed two motions under seal (Dkts. 39, 40).  For two reasons, those motions—and any orders of this Court resolving them—should be unsealed.

Judge Lodge's decision in *D.A. v. Meridian School Dist. No. 2*, CV11-119-S-EJL (Dec. 16, 2011) (attached as "Exhibit 1"), cogently explains the first reason.  In *D.A.*, as here, the Court had to determine whether to unseal court records, including a court order.  The Court began its analysis by citing a line of Supreme Court and Ninth Circuit cases for this principle: "Court proceedings and records are presumptively open to the public. *See, e.g., Nixon v. Warner Comm., Inc.,* 435 U.S. 589, 597 (1978)." *D.A.*, Slip Op. at 6 (other citations omitted).  The public's right of access to court documents "'is grounded in the First Amendment and in common law.'" *Id.* (quoting *CBS, Inc. v.*

Case 1:11-cv-00185-EJL   Document 50   Filed 06/24/13   Page 2 of 5

*United States District Court*, 765 F.2d 823, 835 (9th Cir. 1985).  Thus, in determining whether to bar public access, "courts 'start with a strong presumption in favor of access to court records.' *Foltz v. State Farm Mut. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)." *D.A.*, Slip Op. at 7.

The purpose of the right of access, Judge Lodge explained, is to ensure that civil litigation takes place "'under the public eye . . . because it is of the highest moment that those who administer justice should always act under the sense of public responsibility.'" *Id.* at 6-7 (citation omitted). Adjudicating civil cases in the open "serve[s] as a check upon the judicial process—an essential component in our structure of self-government.'" *Id.* at 6 (quoting *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606 (1982)).

A party seeking to seal a matter "bears the burden of meeting a 'compelling reasons' standard, under which the party must 'articulate compelling reasons supported by factual findings'" that outweigh the "presumed right of access." *Id.* at 7 (quoting *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006) (citations omitted).  A court may only seal a document by articulating "particularized and specific findings" of a compelling need for secrecy, and the scope of the order must be "narrowly tailored" to protect that interest. *Id.* at 8 (citing *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510-512 (1984).[1]

CCA cannot meet its heavy burden of proof.  Until now, *every* document filed in this three-year old litigation has been unsealed, as it should be.   Nothing in Plaintiffs' two motions requires hiding from the public.  On the contrary, as explained in the next section, this is precisely the information that the public has a right to know.  Accordingly, for the reasons set forth in *D.A.*, Plaintiffs' two motions should be unsealed.

The second reason why Plaintiffs' two motions should be unsealed relates to the particular facts of this case.  CCA not only wants to prevent this Court from operating under the public eye.

---

[1] Therefore, if CCA is able to identify some legitimate confidentiality concerns in Plaintiffs' two motions—and the Plaintiffs know of none—they should be addressed by narrowly tailored, in-document redactions, and not through a blanket seal of the entire record.

CCA also wants the power to control, if not monopolize, the flow of information to the public concerning the scope and magnitude of CCA's misconduct.

On April 11, 2013, two press releases were issued, one by CCA (attached as "Exhibit 2") and the other by the Idaho Department of Correction (IDOC), which quotes CCA. (Attached as "Exhibit 3.")  In both releases, CCA makes self-serving statements about the extent of its misconduct that the Plaintiffs believe are false and deliberately deceptive.  For instance:

- CCA claims that 4,800 hours were falsified.  Plaintiffs believe the amount is closer to 20,000.

- CCA claims that ICC employees committed the falsification all on their own.  Plaintiffs believe that top CCA administrators orchestrated the falsification in a willful and deliberate attempt to extract tens of thousands of dollars of undeserved profits.

- CCA claims that this was an isolated, narrow incident.  Plaintiffs believe that understaffing prisons is CCA's standard practice and that CCA deliberately understaffed ICC during the entire term of this Court's Settlement Agreement.

Plaintiffs have gathered compelling information that contradicts all of CCA's public statements regarding the scope and willfulness of CCA's misconduct.  This includes information contained in three affidavits from current or former CCA employees.  However, the Plaintiffs filed that information with the Court under seal, thus preventing the public from accessing it.  Unless Plaintiffs' motions are unsealed, CCA will be the only party permitted to speak publicly about these matters.  Everything of interest that the Plaintiffs learn about CCA's misconduct will be filed with the Court, but the minute it is filed, it becomes covered by a cloak of secrecy.

CCA courted public attention in its press releases but, ever since, has prevented the Plaintiffs from telling the public the other side of the story.  Idaho newspapers have written articles discussing CCA's disclosures, but none of them contains the information about CCA's continuing deception discussed in Plaintiffs' sealed records.  This is akin to a prior restraint on speech, inconsistent with the First Amendment. *See Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976)

("prior restraints on speech *and publication* are the most serious and least tolerable infringement on First Amendment rights.") (Emphasis added.)  As one federal court stated in denying a request from prison officials to seal information regarding the operation of a prison, "the public has a right, and even a responsibility . . . to monitor the activities and performance of their own government and use this information to implement change if needed." *Skinner v. Uphoff*, 2005 WL 4089333, at *3 (D. Wyo. Sept. 27, 2005).  For this reason, too, Plaintiffs' two motions should be unsealed.

The method by which federal courts enforce their orders is through the power of contempt.  *See Frew v. Hawkins*, 540 U.S. 431, 432 (2004) ("Federal courts are not reduced to approving consent decrees and hoping for compliance.  Once entered, that decree may be enforced [by holding a recalcitrant party in contempt of court].").  Plaintiffs made sure that the Settlement Agreement protects their right to seek contempt in the event of CCA's noncompliance.  Indeed, Paragraph 15(c) of the Agreement employs the same term that *Frew* employs by expressly stating that Judge Carter "shall have authority *to enforce* the terms of this agreement in his capacity as a Federal District Court Judge." (Emphasis added.)

The Settlement Agreement creates a three-step process to resolve disputes.  Paragraph 15(a) of the Agreement describes the first step, and it requires that the Plaintiffs submit a written grievance to the Defendants.  Significantly, 15(a) provides that *this* step be subject to a nondisclosure requirement.  No similar language is contained in 15(c), which sets forth the third step, and which authorizes the Plaintiffs to enforce the Agreement by submitting an action to Judge Carter (rather than to Judge Lodge) for adjudication as a Federal District Court Judge.

Thus, if CCA claims that Paragraph 15(c) waives Plaintiffs' right to file a contempt motion, the Court must reject that claim.  All of Plaintiffs' attorneys were insistent during negotiations on preserving the right to file a contempt action.  Indeed, Mr. Pevar discussed at length the "*Kokkonen*" issue (*Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994)),

4

explaining why it was so critical to the Plaintiffs that Judge Carter sign the Agreement, and that the Court's order of dismissal incorporate the Agreement.   CCA agreed to *both* of those conditions.   Paragraph 15(c), which ensures that this Court may "enforce the terms of this agreement," thus guarantees that the Court has the authority to hold CCA in contempt of court for noncompliance.   *See Kokkonen*, at 381 (holding that where, as here, "the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal, . . . a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist").[2]

For the foregoing reasons, the Plaintiffs respectfully request that this Court unseal (at its earliest opportunity) the two motions recently filed by the Plaintiffs.   CCA should no longer be allowed to monopolize speech on this issue.

Respectfully submitted this 24th day of June, 2013.

/s/  Stephen L. Pevar
Stephen L. Pevar
Ritchie Eppink

Attorneys for the Plaintiffs

### CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2013, I electronically filed under seal the foregoing motion and sent electronic copies to the following persons:

Kirtlan Naylor       kirt@naylorhales.com
James Huegli         jameshuegli@yahoo.com
Daniel Struck        dstruck@ishfirm.com
Tara Zoellner        tzoellner@gmail.com

/s/  Stephen L. Pevar
Stephen L. Pevar

---

[2] As Judge Lodge recently confirmed in his order of referral, "[t]he Court has retained post-dismissal jurisdiction over this case. (Dkt. 26.)" *See* Dkt. 44 at 1.