

FILED

OCT 1 2 2007

CLERK, U S DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION
DEPUTY

___ Priority
___ Send
___ Clsd
___ Enter
___ JS-5/JS-6
___ JS-2/JS-3

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

SYSTEMS DIVISION, INC.,                )   **CASE NO. SA CV 00-135 DOC (ANx)**
                                        )
    **Plaintiff,**               )
                                        )   **O R D E R** GRANTING
    v.                          )   **PLAINTIFF'S MOTIONS TO HOLD**
                                        )   **DEFENDANTS IN CONTEMPT**
**TEKNEK ELECTRONICS, LTD.;**          )
**TEKNEK, LLC; TEKNEK**                )
**HOLDINGS, LTD.; JONATHAN**           )
**KENNETT; and SHEILA**                )
**HAMILTON,**                          )
                                        )
    **Defendants.**              )
                                        )
                                        )
                                        )
                                        )
                                        )
                                        )
                                        )

ENTERED - SOUTHERN DIVISION
CLERK, U S DISTRICT COURT

OCT 1 5 07

CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

DOCKETED ON CM

OCT 1 5 2007

BY                        037

Before the Court are Plaintiff Systems Division, Inc.'s (1) Motion for Order to Show Cause Re Contempt Re Teknek Doing Business in United States in Violation of Court Order Dated April 18, 2005 and (2) Motion for Order to Show Cause Re Contempt Re Teknek's Violation of Magistrate Judge Nakazato's Order Dated March 16, 2007. After considering the moving, opposing, and replying papers, as well as oral arguments, the Court hereby GRANTS the Motions.

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

563

## I.   BACKGROUND

In July 2004 a jury found Defendants Teknek Electronics, Ltd. and Teknek, LLC had willfully infringed two of SDI's patents and that SDI had suffered $3 million in damages.  The Court entered judgment for $3 million on August 18, 2004 and later awarded $771,555.25 in prejudgment interest in addition to the $3 million verdict on November 5, 2004.

### A.   April 18, 2005 Order

Following entry of judgment, SDI began its attempts to enforce the judgment.  Beginning in December 2004, SDI filed several applications and Magistrate Judge Nakazato issued several orders for judgment debtor examinations.  After some service issues with the earlier applications and orders, on March 29, 2005, SDI filed proofs of service with the Court, demonstrating that SDI had served Teknek Electronics in Scotland with the amended application and order for appearance and examination, which noticed the judgment debtor examination for March 3, 2005 (Docket No. 309) as well as Judge Nakazato's order dated March 7, 2005, continuing the judgment debtor examination to April 7, 2005 (Docket No. 312).  The Proofs of Service did not mention Teknek LLC.  Neither Teknek entity appeared for the judgment debtor examination on April 7, 2005.  On April 8, 2005, both parties provided written status reports to the Court.  SDI requested that the Court hold Teknek in contempt for failure to appear at the April 7 judgment debtor examination.  On April 11, 2005, the Court ordered Teknek to appear on April 18, 2005 for post-judgment discovery depositions and to appear to show cause why Teknek's failure to appear at the April 7, 2005 judgment debtor examination should not constitute contempt.

On April 18, 2005, the Court found that Teknek Electronics had violated Magistrate Judge Nakazato's order dated January 27, 2005, which required Teknek Electronics to appear for a judgment debtor examination by failing to appear for the April 7, 2005 judgment debtor examination.  The Court also found that (1) Judge Nakazato's orders were clear, definite, and unambiguous; (2) Teknek had been properly served; and (3) Teknek had simply failed to appear.  Finally, the Court rejected Teknek's conclusory statement about its purported inability to comply.  Thus, the Court concluded that an order of contempt against Teknek Electronics was proper and found that "coercive sanctions are necessary to break Teknek's willful disregard for

2

1    the court's processes." Order Granting Mot. to Hold Def. in Civil Contempt 7:5-6 (Docket No.

2    334). In addition to ordering Teknek Electronics to reimburse SDI for the costs it had incurred

3    in its efforts to collect the judgment, the Court entered the following injunction:

4              IT IS FURTHER ORDERED that Teknek Electronics,

5            Ltd., its agents, assigns, principals, employees, officers,

6            successors in interest, trustees in bankruptcy, and anyone

7            acting on their behalf or who is involved in any joint enterprise

8            with them or any of them, or any of their agents, assigns,

9            principals, employees, officers, successors in interest, or

10           trustees in bankruptcy are ENJOINED from carrying on any

11           business in the United States and ENJOINED from

12           transferring or disposing of any of their assets (including

13           monetary assets) to any other Defendant or any third party, or

14           from transferring any assets (including monetary assets) out of

15           the United States.

16            The injunctions against Teknek Electronics, Ltd. shall

17           remain in full force and effect until Teknek Electronics, Ltd.

18           appears for a judgment debtor examination before Magistrate

19           Judge Nakazato in accordance with the Amended Application

20           and Order for Appearance and Examination and Attachment A

21           thereto, issued on Jan. 27, 2005, Docket No. 309. It is Teknek

22           Electronics, Ltd.'s obligation to schedule the judgment debtor

23           examination for a time convenient to Magistrate Judge

24           Nakazato and SDI. The judgment debtor examination must

25           occur within thirty (30) days of this order. Teknek Electronics,

26           Ltd. must inform the Court within ten (10) days of this order of

27           the scheduled and mutually convenient date of the judgment

28           debtor examination.

*Id.* at 7:27-8:15.  On May 5, 2005, Sheila Hamilton ("Hamilton") appeared for the judgment debtor examination, yet refused to answer certain questions.  Accordingly, because Hamilton was not properly prepared to testify, Judge Nakazato continued the examination to August 11, 2005.  On May 13, 2005, the Court confirmed that Hamilton's appearance had not discharged the April 18, 2005 Injunction, designed to coerce Teknek Electronics to submit to a complete judgment debtor examination, because the judgment debtor examination had not yet been completed.  Order Den. Ex Parte Application to Clarify Inj. (Docket No. 389).  Thus, the Court ruled that until Judge Nakazato concludes the judgment debtor examination and issues a minute order stating that the examination has concluded, the Injunction remains in effect.  *Id.*

By May of 2005, both Defendants Teknek Electronics and Teknek LLC were insolvent.[1] The assets of these Defendants had been transferred over the course of this litigation to Defendant Teknek Holdings, Ltd. ("THL") which like the other Teknek Entities, is wholly owned by Defendants Sheila Hamilton (fifteen percent) and Jonathan Kennett (eighty-five percent).  On June 1, 2005, the Court granted SDI's motion for an OSC and directed Teknek LLC, Teknek Electronics, Kennett, and Hamilton to appear before the Court on June 20, 2005 to show cause as to why they should not be held in contempt.  On June 20, 2005, Defendants Kennett and Hamilton failed to appear before this Court in violation of the Court's June 1, 2005 Order directing them to personally appear.  On June 20, 2005, the Court advanced the judgment debtor examination set for August 11, 2005 to June 27, 2005.  On June 27, 2005, Colin MacKillop appeared on behalf of Teknek Electronics for the judgment debtor examination and Judge Nakazato ordered Teknek to produce the documents and information responsive to seven categories identified by counsel subject to a stipulated protective order.  Judge Nakazato also continued the examination to July 21, 2005.  On July 6, 2005, Judge Nakazato stayed the judgment debtor examination in response to Teknek Electronics' notice of stay as a result of its Scottish insolvency.

---

[1]  On May 26, 2005, Teknek Electronics filed an insolvency petition in the United Kingdom.  On July 12, 2005, Teknek LLC filed a Chapter 7 bankruptcy in Illinois.

1    To this day the judgment debtor examination has not concluded and Teknek Electronics
2  has not produced all of the documents requested in Attachment A.
3    **B.    March 16, 2007 Order**
4    On January 2, 2007, this Court granted SDI's motion to add THL, Hamilton, and Kennett
5  (collectively the "THL parties") to the underlying judgment against Teknek Electronics and
6  Teknek LLC finding that the assets of Teknek Electronics and Teknek LLC had been
7  fraudulently transferred to THL for inadequate consideration with the intent to defraud
8  Defendants' judgment creditor SDI and further that THL was a mere continuation of Teknek
9  Electronics.
10    On January 17, 2007, SDI served THL with a Rule 30(b)(6) notice of deposition and
11  document requests for February 27, 2007.  THL sought a protective order and failed to appear
12  even though no protective order had been granted.  On March 16, 2007, Magistrate Judge
13  Nakazato denied THL's motion for a protective order and directed THL to produce Rule
14  30(b)(6) witness(es) for examination in the attorney conference room of the court on March 26,
15  2007.  Judge Nakazato further observed that "THL, Hamilton, Kennett, and Teknek have
16  engaged in exceptional and unusual improper actions that have frustrated Plaintiff's lawful
17  efforts to satisfy the judgment against Teknek and forced Plaintiff to seek, and the Court to
18  grant, orders that are generally not required." Mar. 16, 2007 Order at 3, Ex. 2 to O'Connor Decl.
19  (Docket No. 507).  The order also required THL to produce all documents requested in SDI's
20  notice of deposition and to pay sanctions to SDI for bringing its motion for a protective order
21  without good cause.  On March 23, 2007, counsel for THL sent a facsimile letter to SDI's
22  counsel, informing him that no witnesses or documents would appear as ordered on March 26.
23  On March 26, 2007, counsel for THL appeared, but THL failed to produce Rule 30(b)(6)
24  witness(es) for the judgment debtor examination as ordered.
25    **C.    Sanctions Requested**
26    Although SDI labels both Motions as "motions for an order to show causes re contempt,"
27  in the accompanying papers SDI requests that the Court make findings of contempt and issue an
28  order with multiple types of sanctions.  THL, Kennett, and Hamilton have had the opportunity to

address the merits of the contempt motions and in fact, have so addressed both the request to hold them in contempt and the specific sanctions sought in their Oppositions to both Motions. Accordingly, the Court sees no benefit to delaying the ruling on the merits by first issuing an OSC. Thus, unless the THL parties request the opportunity to personally appear in this Court regarding the contempt motions at the hearing, the Court will proceed to the merits of SDI's request rather than issuing an OSC. Counsel for the THL parties did not make such a request.

As to sanctions, SDI requests that the Court issue an order including the following provisions: (1) prohibiting all Teknek Entities, Kennett, and Hamilton from engaging in any business activities within the U.S.; (2) directing U.S. Customs to seize any Teknek products; (3) prohibiting anyone from engaging in business activities in the U.S. with any of the Teknek Entities; (4) barring anyone from paying any monies owed to any Teknek entity or individual; (5) barring Teknek from putting any information on any internet website that can be viewed from the U.S.; (6) ordering THL, Kennett, and Hamilton to provide SDI with a complete list of the customers and licensees of the Teknek Entities from 2002 through 2007; (7) ordering THL, Kennett, and Hamilton to serve a copy of the contempt order on customers, agents, representatives and licensees of each of the Teknek Entities; (8) ordering THL, Kennett, and Hamilton to provide SDI with a complete list of all current employees, officers, directors, agents, representatives, licensees of the Teknek Entities; (9) ordering THL, Kennett, and Hamilton to provide a written accounting to SDI of all accounts receivable; (10) ordering THL, Kennett, and Hamilton to provide to SDI all documents requested in Attachment A to SDI's notice of Rule 30(b)(6) deposition of THL dated January 17, 2007; (11) ordering THL to produce its Rule 30(b)(6) witness(es); (12) ordering THL, Kennett, and Hamilton to provide SDI the sum of all revenue received by the Teknek Entities during the period from April 18, 2005 to August 1, 2005 and from October 6, 2006 to the present;[2] (13) issuing a warrant for the arrest of Kennett and Hamilton; (14) imposing an additional fine on THL, as well as Kennett and Hamilton personally, in the amount of $52,009.79; (15) ordering sanctions against the Teknek Defendants

---

[2] The case was stayed from August 1, 2005 to October 6, 2006.

1    for having to bring these motions.

2    **D.  Attempted Settlement and Other Recent Developments**

3    The hearing on these motions was originally scheduled for April 30, 2007.  Shortly before

4 the hearing, counsel for the THL parties informed SDI's counsel and the Court that his clients

5 had agreed to satisfy the underlying judgment in this case plus interest.  The THL parties had

6 therefore already arranged for financing of approximately $4 million from the Bank of Scotland

7 to cover the judgment as well as pre-judgment and post-judgment interest.  Accordingly, the

8 hearing on the contempt motions was continued to July 23, 2007 to give the parties time to (1)

9 notify the courts in Illinois and Scotland where other proceedings related to the collection of the

10 underlying judgment in this case were underway and (2) negotiate payment of some percentage

11 of the attorneys' fees and costs SDI has expended in its efforts to collect the judgment.  On July

12 17, 2007, the hearing was again continued at the request of both parties to September 10, 2007,

13 due to developments in the Illinois bankruptcy court.

14    On June 29, 2007, two months after the THL parties and SDI had reached a settlement

15 whereby the THL parties would pay SDI the full judgment in this case, plus pre- and post-

16 judgment interest, the Trustee obtained a preliminary injunction from the bankruptcy court

17 purporting to bar SDI from collecting the judgment in this case.[3]  The Trustee then proceeded to

18 _____

19    [3] The bankruptcy court's injunction disturbingly misrepresents the findings

20 underlying the Court's January 2, 2007 Order adding Hamilton, Kennett, and THL to the
judgment. *See* June 29, 2007 Prelim. Inj. Order ¶¶ N ii, iv (pp.3-4) & Z (p.7), Ex. H to

21 Defs.' July 16, 2007 Status Report.  First, the Court did not find that assets were
transferred from Teknek LLC to Teknek Electronics and then THL; rather the Court's

22 Order clearly states that Teknek LLC's assets were transferred directly to THL and
similarly, that Teknek Electronics's assets were transferred directly to THL. Jan. 2, 2007

23 Order at 2:21-3:22.  The bankruptcy court's conflation of these separate transfers and

24 fabrication of transfers between Teknek LLC and Teknek Electronics improperly implies
that all assets transferred to THL came from Teknek LLC, which is patently false.

25 Second, the bankruptcy court's injunction states that the Court found that Hamilton and

26 Kennett transferred Teknek LLC's assets with the actual intent to defraud SDI, implying
that this finding was limited to Teknek LLC.  The Court's Order, however, is clear that

27 this finding relates to the transfer of the assets of both Defendants, Teknek Electronics

28 and Teknek LLC. *Id.* at 16:11-25.

1    enter into a "settlement" with the THL parties in which THL agreed to pay the Trustee the $4

2    million that THL had previously represented to SDI and this Court that it would pay to SDI in

3    satisfaction of the judgment in this case.  There is a significant difference, however, between this

4    later settlement in which the THL parties will pay the trustee in lieu of SDI and the original

5    settlement between the THL parties and SDI – under the later settlement, the Trustee and his

6    attorneys stand to pocket roughly half of SDI's judgment, such that SDI would only recover $2

7    million of the $4 million it is owed in judgment and interest.  The Trustee's present attorneys

8    alone stand to take 25% or roughly $1 million of the settlement for minimal, if any work, given

9    that the THL parties and SDI had reached a settlement prior to any involvement of the Trustee

10   and his attorneys in any settlement discussions with the THL parties.[4]

11        In addition, the Trustee's attorneys have filed a number of recent motions in the Illinois

12   bankruptcy court, which seek to permanently interfere with SDI's ability to collect its jury

13   verdict judgment.  First, the Trustee's attorneys have filed a motion and proposed order with the

14   bankruptcy judge asking that she declare this Court's September 6, 2007 Minute Order invalid

15   and directing SDI "to turn over tot [sic] the Trustee any and all value received as a result of

16   SDI's collection of the SDI Judgment."  Proposed Order ¶ 2, Ex. 1 to Supp. Notice Pursuant to

17   Court's Order of July 17, 2007 ("Supp. Not.").

18        The Trustee has also filed a Motion for Authority to Compromise Claims with Teknek

19   and Other Parties and Related Relief, which seeks approval of the "settlement" and further asks

20   the bankruptcy judge to enjoin "SDI, its officers, employees, agents, and assigns from collecting

21

22

23

24      [4] In fact, the attorneys who stand to pocket over $1 million of SDI's judgment were

25   not even appointed to represent the Trustee until after the THL parties had already agreed
    to pay SDI $4 million to satisfy its judgment, plus interest.  Specifically, the bankruptcy

26   court approved the Trustee's retention of Steven B. Towbin and the law firm of Shaw
    Gussis Fishman Glantz Wolfson & Towbin LLC as general counsel on August 1, 2007,

27   effective as of June 4, 2007.  Thus, Shaw Gussis stands to receive $1 million for what

28   appears to be a month and a half of work.

1   or otherwise pursuing collections of the SDI Judgment and any related interest."[5]  Mot. for

2   Authority to Compromise ¶ 51, Ex. A to Defs.' Aug. 29, 2007 Status Report ("Aug. 29 Status

3   Report").  The proposed order submitted in connection with the Trustee's motion purports to

4   justify the request for a permanent injunction against SDI with the fallacy that "because the

5   Proposed Compromise contemplates payment in full of the SDI Judgment, the injunction would

6   only serve as a mechanism to prevent SDI from continuing to pursue and harass the Teknek and

7   Other Parties with respect to obligations which have already been satisfied."  Proposed Order ¶

8   BBB, Ex. A to Aug. 29 Status Report; *see also* Proposed Permanent Inj. Order ¶ S, Ex. B to

9   Aug. 29 Status Report.  This is patently untrue given that the Trustee and his attorneys stand to

10  take approximately half of the "settlement" proceeds, such that SDI would not recover

11  approximately $1 million of its $3 million judgment and would not recover a penny of the

12  approximately $1 million of interest accrued to date under the Trustee's "settlement."  Realizing

13  the extraordinary nature of the relief requested, the Trustee has filed another motion seeking the

14  bankruptcy court's approval to pay a "consulting expert" $800.00 per hour, with a $5,000

15  retainer, to testify that the bankruptcy court has jurisdiction to issue the requested permanent

16  injunction against SDI.  Tr.'s Mot. for Authority to Pay Consulting Expert, Ex. 3 to Supp. Not.

17          Finally, possibly after realizing the inequity of the Trustee's attorneys pocketing $1

18  million for a few months work to "reach" a settlement that had already been reached between the

19  principals in April 2006, three months prior to the attorneys' appointment, the Trustee filed

20  another motion seeking to shield their twenty-five percent cut from further scrutiny by the

21  bankruptcy judge.  *See* Tr.'s Mot. to Clarify Order Authorizing Tr.'s Retention of General

22  Counsel ¶¶ 2-3, Ex. 4 to Supp. Not.  Under the guise of "avoid[ing] unnecessary administrative

23  fees and costs," the Trustee seeks to modify the bankruptcy court's August 1, 2007

24  Compensation Order awarding the Trustee's attorneys, Shaw Gussis "*[subject to the approval of*

25  _____

26          [5] The Teknek parties are complicit in the Trustee's request for this extraordinary
27  injunction, seeking to prevent SDI from recovering its due, by enjoining it from
    proceeding in this Court to recover from Teknek Electronics, as the Teknek parties
28  purportedly refused to settle without such an injunction.

1  *th[e bankruptcy] court* . . . a one-third contingency of the value of any assets recovered . . . up to

2  $300,000 and one-fourth contingency fee for all amounts in excess of $300,000, plus the

3  payment of all approved expenses" *Id.* ¶ 2 (emphasis added). Specifically, the Trustee seeks to

4  modify the August 1, 2007 Compensation Order such that the Trustee's attorneys' $1 million

5  contingency fee is no longer subject to the bankruptcy court's approval, but instead can be paid

6  "without further order of the Court." *Id.* ¶ 3.

7       The Court deferred rulings on these contempt motions to permit SDI and the THL parties

8  to negotiate a global settlement with the Trustee and other parties to the Illinois bankruptcy.

9  They were, however, unable to reach a settlement.

10  **II.    LEGAL STANDARD**

11      Criminal contempt is established where there is a clear and definite court order, the

12  contemnor knows of the order, and he or she willfully disobeys the order. *United States v. Rose*,

13  806 F.2d 931, 933 (9th Cir. 1986). A criminal contempt sanction serves the dual purpose of

14  vindicating the Court's authority and punishing the contemnor. *United States v. Doe*, 125 F.3d

15  1249, 1256 (9th Cir. 1997).

16      The same elements apply in civil contempt proceedings, except that the failure to comply

17  with the Court's order need not be willful. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187,

18  191, 69 S. Ct. 497 (1949); *Perry v. O'Donnell*, 759 F.2d 702, 705 (9th Cir. 1985). "Failure to

19  comply consists of not taking 'all the reasonable steps within [one's] power to insure compliance

20  with the order.'" *Balla v. Idaho State Board of Corrections*, 869 F.2d 461, 466 (9th Cir. 1989)

21  (quoting *Sekaquaptewa v. MacDonald*, 544 F.2d 396, 406 (9th Cir. 1976)). "A court has wide

22  latitude in determining whether there has been contemptuous defiance of its order." *Gifford v.*

23  *Heckler*, 741 F.2d 263, 266 (9th Cir. 1984). The purpose of civil contempt is to coerce

24  compliance with a court order or to compensate another party for the harm caused by the

25  contemnor. *Local 28 of Sheet Metal Workers' Int'l Ass'n v. EEOC*, 478 U.S. 421, 443, 106 S.

26  Ct. 3019 (1986). Compliance may be coerced through a fine, imprisonment, or both. *In re*

27  *Grand Jury Proceedings*, 280 F.3d 1103, 1109-10 (7th Cir. 2002); *Campbell v. Keystone Aerial*

28  *Surveys, Inc.*, 138 F.3d 996, 1005 (5th Cir. 1998). If the contemnor can end the fine or

1   imprisonment by complying with a court order and thus "purging" the contempt, the contempt is

2   civil in nature. *Hicks ex rel. Feiock v. Feiock*, 485 U.S. 624, 634, 108 S. Ct. 1423 (1988). In

3   determining the amount of a civil contempt sanction, the Court should consider: (1) the harm

4   from noncompliance; (2) the probable effectiveness of the sanction; and (3) the burden the

5   sanctions may impose on the contemnor's financial resources. *United States v. United Mine*

6   *Workers*, 330 U.S. 258, 303-04, 67 S. Ct. 677 (1947).

7   **III.   DISCUSSION**

8   　　As a preliminary matter, the Court need not re-analyze Defendants' argument that SDI is

9   judicially estopped from seeking contempt sanctions because the Court previously rejected an

10  identical judicial estoppel argument raised in opposition to SDI's Motion requesting that THL be

11  ordered to assign its U.S. patents. *See* Docket No. 514. Nevertheless, the Court wishes to make

12  one comment about the Teknek Entities attempt to use the doctrine of judicial estoppel as a

13  shield in this context. The Teknek Entities may not flout the orders of a United States District

14  Court with impunity and then hide behind the doctrine of judicial estoppel when Plaintiff SDI

15  was forced to file the pleading upon which Defendants rely due to Defendants' refusal to pay the

16  three-year-old judgment in this case.

17  　　**A.   Bankruptcy Court's Interference**

18  　　In addition, prior to reaching the merits of SDI's contempt motions, the Court addresses

19  Defendants' contention that the Illinois bankruptcy court's injunction against SDI precludes the

20  Court from ruling on SDI's contempt motions. First, the Illinois bankruptcy court's injunction

21  can only prevent collection of the judgment as it relates to debtor Teknek LLC.[6] To begin with,

22  the automatic stay does not apply to non-bankrupt co-defendants. *Pitts v. Unarco Indus.*, 698

23  ────────────────

24  　　[6] Defendants' argument that the Chapter 7 Trustee was the only one with the
    authority to pursue THL, Kennett, and Hamilton under theories of alter ego and

25  fraudulent conveyance conveniently ignores the fact that only SDI had standing to pursue

26  these claims as they relate to Teknek Electronics, who is not a debtor in Illinois, nor a
    party to that proceeding. In this case, THL, Kennett, and Hamilton were added as

27  judgment debtors in large part because of the fraudulent transfers from Teknek

28  Electronics to THL and the fact that THL is a mere continuation of Teknek Electronics.

1  F.2d 313, 314 (7th Cir. 1983); *see also* 11 U.S.C. § 362(a)(1) (staying judicial and other

2  "proceeding[s] *against the debtor*") (emphasis added).  This is true even if the non-bankrupt co-

3  defendant is "in a similar legal or factual nexus with the debtor." *Mar. Elec. Co. v. United*

4  *Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991).  Moreover, a bankruptcy court's general

5  equity powers under 11 U.S.C. §105 do not allow it to extend the automatic stay to a non-

6  bankrupt co-defendant except under specific circumstances, e.g. in a Chapter 11 case where

7  extension of automatic stay to cover non-bankrupt co-defendants of debtor contributes to the

8  debtor's ability to achieve rehabilitation. *Teachers Ins. & Annuity Ass'n v. Butler*, 803 F.2d 61,

9  65 (2d Cir. 1986) (citing as examples *In re Old Orchard Investment Co.*, 31 B.R. 599, 603 (W.D.

10  Mich. 1983) (bankruptcy court in Chapter 11 case may permanently enjoin creditor from

11  proceeding against general partners of debtor in state court action to collect debt if action could

12  have been filed as claim against debtor-partnership, but may not enjoin action where claim could

13  not have been filed against debtor partnership); *In re Johns-Manville Corp.*, 33 B.R. 254, 263-64

14  (Bankr. S.D.N.Y. 1983); *In re Otero Mills, Inc.*, 25 B.R. 1018, 1020-21 (D.N.M. 1982)).  As a

15  threshold matter, Teknek LLC has not filed a Chapter 11 proceeding and thus, there is no goal of

16  reorganization or concern about rehabilitation which might warrant an extension of the stay to

17  non-bankrupt co-defendants like Teknek Electronics.  Moreover, "§ 105(a) may only be invoked

18  'if the equitable remedy utilized is demonstrably necessary to preserve a right elsewhere

19  provided in the Code.'" *United States CFTC v. NRG Energy, Inc.*, 457 F.3d 776, 781 (8th Cir.

20  2006) (quoting *In re Ludlow Hosp. Soc., Inc.*, 124 F.3d 22, 28 (1st Cir. 1997)).  There is no right

21  to extend the automatic stay to non-debtor co-defendants under the present circumstances.

22      Pursuant to the automatic stay, if Teknek LLC were the only defendant in this case, the

23  bankruptcy judge could preclude SDI from pursuing collection of the judgment against Teknek

24  LLC in this Court during the pendency of its Chapter 7 bankruptcy.  Yet, Teknek LLC is not the

25  only defendant the jury found liable in this case.  Teknek LLC and its co-defendant Teknek

26  Electronics were held jointly and severally liable for the $3 million verdict, upon which

27  judgment was entered against both Teknek LLC and Teknek Electronics.  Therefore, even

28  though Teknek LLC's bankruptcy has temporarily precluded the execution of this judgment

against Teknek LLC, Teknek LLC's bankruptcy has *no* effect on SDI's ability to pursue collection of its judgment against Teknek Electronics.  Moreover, the extreme lengths Defendants have gone to in an effort to avoid satisfying the judgment in this case places the current situation within the exact type of circumstance under which the Third Circuit has explicitly held "a bankruptcy court may not properly exercise § 105 jurisdiction to issue a stay with respect to non-bankrupt co-defendants":

> While we decline to define under what circumstances, if any, a
> bankruptcy court may properly exercise § 105 jurisdiction to issue a
> stay with respect to non-bankrupt co-defendants, it is clear that any
> such jurisdiction cannot extend to efforts made in bad faith by
> non-bankrupt co-defendants in order to escape from the liability
> imposed by an adverse district court judgment.

*Teachers Ins.*, 803 F.2d at 65-66.  Accordingly, the Illinois bankruptcy court has no authority to extend the automatic stay to protect non-debtor Teknek Electronics or otherwise preclude SDI from enforcing this Court's judgment as it pertains to Teknek Electronics, which is neither a debtor, creditor, nor party to Teknek LLC's Chapter 7 proceeding.

Moreover, in cases, such as this one, involving multiple parties, courts "'disaggregate' the proceedings so that claims against co-defendants who are not under the protection of the bankruptcy court may go forward, as well as claims for which a stay is unnecessary to protect the debtor." *Seiko Epson Corp. v. Nu-Kote Int'l, Inc.*, 190 F.3d 1360, 1364 (Fed. Cir. 1999).  Such "disaggregation of a non-bankrupt party from a debtor protected by § 362 does not require action of the bankruptcy court, for the non-bankrupt party is not under the protection of that court." *Id.* at 1364-65.  Accordingly, SDI may continue its efforts to collect its judgment against Teknek Electronics and its alter egos in this Court without seeking the bankruptcy court's permission.

Additionally, as the Supreme Court stated in *Celotex Corp. v. Edwards*, 514 U.S. 300, 115 S. Ct. 1493 (1995), in its discussion of the slight variations between the Circuits' tests for determining a bankruptcy court's "related to" jurisdiction, "whatever test is used, these cases make clear that bankruptcy courts have no jurisdiction over proceedings that have no effect on

1  the estate of the debtor." *Celotex*, 514 U.S. at 308, n.6.  SDI's pursuit of the collection of its

2  judgment against Teknek Electronics in this Court is just such a situation as this does not effect

3  the estate of Chapter 7 debtor Teknek LLC.  Moreover, while the *Celotex* opinion recognizes the

4  bankruptcy court's authority to enjoin the execution of a supersedeas bond against the debtor's

5  surety in a Chapter 11 case, where allowing multiple judgment creditors to reach the sureties

6  would interfere with debtor's ability to formulate a feasible reorganization plan, the Supreme

7  Court explicitly noted the importance of the Chapter 11 context.  *Id.* at 310 (pointing out that the

8  bankruptcy proceeding at issue was Chapter 11 reorganization, not a Chapter 7 liquidation).  The

9  Supreme Court further stated that the bankruptcy court's jurisdiction "may extend more broadly"

10  in a Chapter 11 case than a Chapter 7 case.  *Id.*

11       Given that the Teknek LLC bankruptcy is a Chapter 7 case, *Celotex* does not sanction the

12  Illinois bankruptcy court's injunction prohibiting SDI's collection efforts against Teknek

13  Electronics and abrogating this Court's prior orders.  Again, as the Supreme Court recognized "a

14  bankruptcy court's 'related to' jurisdiction cannot be limitless."  *Id.* at 308, n.6 (noting that

15  "bankruptcy courts have no jurisdiction over proceedings that have no effect on the debtor").  In

16  contrast to the mass tort context of *Celotex*, where permitting the myriad creditors to execute

17  bonds might interfere with the debtor's ability to reorganize under Chapter 11, there is no reason

18  to extend the bankruptcy stay's protection to non-debtor third parties here – such an extension is

19  not required to protect Teknek LLC because permitting SDI to pursue its co-defendant Teknek

20  Electronics in this Court has no effect on Teknek LLC's Chapter 7 estate.  Thus, the Illinois

21  bankruptcy court has no authority to enjoin SDI from proceeding against third parties in this

22  District Court, when the third party is not a debtor, creditor, nor party to Teknek LLC's Chapter

23  7 proceeding and when SDI's collection of its judgment from Teknek Electronics will not affect

24  the Teknek LLC Chapter 7 estate.

25       Moreover, the unique facts of this case reinforce this conclusion and confirm that there is

26  no justifiable rationale to permit the bankruptcy court to enjoin this Court from proceeding with

27  the contempt motions or to enjoin SDI from attempting to collect its judgment from Teknek

28  Electronics – (1) the Teknek LLC Chapter 7 bankruptcy was filed in direct response to the

1   judgment in this case; (2) SDI is the only creditor in the Chapter 7 proceeding; (3) SDI's

2   recovery of the judgment in this case against successors to Teknek Electronics will not affect the

3   Chapter 7 proceeding except to reduce the amount of money SDI needs to collect from Teknek

4   LLC's estate.[7]

5       Despite the lack of any evidence that it would effect Teknek LLC's Chapter 7 estate, the

6   bankruptcy court has decided to enter a broad preliminary injunction, based on fabricated

7   connections between the transfers from Teknek Electronics to THL and those from Teknek LLC

8   to THL, and is contemplating entering a permanent injunction, purporting to preclude SDI and

9   this Court from enforcing the jury verdict against non-debtor Teknek Electronics.  By interfering

10  with SDI's collection efforts against Teknek Electronics and in particular, attempting to enjoin

11  SDI from proceeding with previously pending contempt motions in this Court,[8] the bankruptcy

12  court has exceeded its jurisdiction.  As Judge Easterbrook, sitting by designation in the Northern

13  District of Illinois, so eloquently summarized the impropriety of a bankruptcy court's injunction

14  interfering with pending motions in a district court:

15          For one federal court to issue an injunction forbidding litigation in

16          another is extraordinary, given principles of comity among

17          coordinate tribunals.  *E.g., Kerotest Mfg. Co. v. C-O-Two Fire*

18          *Equipment Co.*, 342 U.S. 180 (1952); *cf. Brillhart v. Excess*

19          *Insurance Co.*, 316 U.S. 491 (1942).  For a bankruptcy judge to issue

20          an injunction with the effect of preempting resolution of a pending

21   _____

22       [7] The Court recognizes that *Celotex* directs parties to challenge an improper
     Section 105 injunction in the bankruptcy court that issued it and if dissatisfied, appeal to
23   the appropriate district court and then to the Court of Appeals.  *Celotex*, 514 U.S. at 313.
     Nevertheless, the egregious nature of what is occurring in the bankruptcy court, the fact
24   that its injunction explicitly rests on misrepresentations as to the facts underlying the
     Court's January 2, 2007 Order, and the impropriety of that court's attempt to enjoin this
25   Court from hearing previously scheduled contempt motions necessitate a response from
     this Court.
26
27       [8] The parties first appeared to argue these contempt motions on April 30, 2007,
28   two months prior to the issuance of the bankruptcy court's June 29, 2007 injunction.

1     motion in a district court is unheard-of. Well, perhaps not un-heard

2     of. I found one case in which a bankruptcy court did so, and the

3     district judge brushed the order aside in derision, treating the order as

4     so patently unauthorized that no further explanation was warranted.

5     *Lower Brule Construction Co. v. Sheesley's Plumbing & Heating*

6     *Co.*, 84 Bankr. 638, 644 (D. S.D. 1988).

7   *In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litig.*, 140 B.R. 969, 974 (N.D. Ill.

8   1992). Such improper interference may require unusual measures. *See, e.g., id.* (invoking All

9   Writs Act to enjoin debtor from enforcing bankruptcy court's TRO, which purported to bar

10  parties in district court action from filing a reply brief to motion re automatic stay's effect on

11  patent litigation or from seeking discovery against debtor in that litigation). Nevertheless, at this

12  time, the Court declines to exercise its powers under the All Writs Act, 28 U.S.C. § 1651(a),[9] to

13  enjoin the Trustee and his attorneys from attempting to enforce the bankruptcy court's injunction

14  against SDI. The Court forbears because of the likelihood that the improper injunction will be

15  invalidated through the proper appeals channels within the Northern District of Illinois, without

16  this Court's meddling in those proceedings.[10] If the Trustee and his attorneys, however, try to

17  enforce the invalid injunction against SDI or its attorneys, the Court will exercise its § 1651(a)

18  powers to enjoin such improper action.

19      While SDI may not obtain a double recovery, SDI is entitled to pursue multiple avenues

20  of redress until it is able to collect the entire judgment in this case, along with pre- and post-

21  judgment interest. It is improper for the Trustee or the Illinois bankruptcy court to interfere with

22  SDI's collection efforts against Teknek Electronics, which is not a debtor, creditor, nor party to

23

24      [9] "The Supreme Court and all courts established by Act of Congress may issue all
    writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the
25  usages and principles of law." 28 U.S.C. § 1651(a).

26      [10] The Court reiterated its intention, in the interests of comity, not to interfere with
    the Illinois proceedings in its October 12, 2007 Minute Order, denying SDI's request that
27  the Court contact the appropriate Article III Judge in Illinois regarding the bankruptcy
    court's injunction.
28

1    Teknek LLC's Chapter 7 proceeding.  Accordingly, SDI may continue its efforts to collect the

2    judgment against Teknek Electronics in this Court and against Teknek LLC in the Illinois

3    bankruptcy court.  If SDI is unable to collect the total amount owed in the Illinois proceeding,

4    SDI may continue to pursue THL, Kennett, and Hamilton as the alter egos of Teknek

5    Electronics, Ltd. in this Court for whatever amount remains due.

6       **B.      April 18, 2005 Order**

7           In SDI's Contempt Motion regarding the April 18, 2005 Order, SDI argues that numerous

8    Teknek Entities formed by Kennett and Hamilton, and acting under the sole control of Kennett

9    and Hamilton, continue doing business in the United States in violation of the April 18, 2005

10   Injunction.  For example, when Kennett and Hamilton were transferring Teknek Electronics'

11   assets to THL, they formed Teknek Manufacturing Ltd. to lease the building and manufacturing

12   equipment formerly used by Teknek Electronics and to license the Teknek intellectual property,

13   including the Teknek trademark.  Teknek Manufacturing serves the same customers and uses the

14   same employees and equipment to provide Teknek products to the U.S. market despite the April

15   18, 2005 Injunction.  Moreover, according the THL's Draft Financial Statement for May 2006,

16   THL wholly owns the following Teknek Entities: Teknek Automation A/S, Teknek (Howwood)

17   Ltd., Teknek (Europe) Ltd., Teknek Asia Ltd., Teknek Manufacturing Ltd., Teknek Japan Ltd.,

18   and Teknek China, Ltd. Ex. 4 ¶ 14 to Decl. of Edward O'Connor ("O'Connor Decl.").  In

19   addition, the THL Financial Statement shows that Kennett and Hamilton are partners in Kenham

20   LLC, a partnership incorporated in the United States, to whom THL sold products amounting to

21   £63,583 during the preceding year. *Id.* ¶ 30.

22          Despite the court order barring Teknek Electronics and "its agents, assigns, principals,

23   employees, officers, successors in interest, trustees in bankruptcy, and anyone acting on their

24   behalf or who is involved in any joint enterprise with them" from conducting any business in the

25   United States, Teknek was listed as an exhibitor in the February 8-10, 2006 IPC Printed Circuits

26   Expo Show Directory in Anaheim, California. Ex. 1 to Decl. of John Korbonski ("Korbonski

27   Decl.").  In addition, Teknek is listed in the Buyer Guide section of the August 2006 edition of

28   the monthly U.S. trade publication "CircuiTree."  Ex. 2 to Korbonski Decl.  Callum Campbell,

1  Marketing Manager is listed as one of the contact people.  *Id.*  On February 21, 2007, SDI's

2  President John Korbonski met Callum Campbell and Stephen Mitchell, Teknek's Managing

3  Director, at the IPC Printed Circuits Expo at the Los Angeles Convention Center.  According to

4  Korbonski, both of these individuals were working in the booth of their U.S. Distributor Tekena

5  USA and have been actively promoting Teknek's products to customers in the United States.

6  Korbonski Decl. ¶¶ 5-7.  In addition, Kennett recently announced Teknek's successes in the U.S.

7  and plans to further penetrate that market: "We are pleased to announce the conclusion of the

8  first license agreement in the USA with further US and Asian licenses expected to conclude

9  shortly.  This will enable sales to grow in all markets around the globe but particularly USA and

10  Asia."  Ex. 4 to Korbonski Decl.  Finally, Teknek Europe Ltd. is listed as an exhibitor at the

11  Converting Machines/Materials Conference and Exhibition in Rosemont, Illinois on June 4-7,

12  2007.  Ex. 3 to Korbonski Decl.

13          THL, Kennett, and Hamilton argue, in response, that they cannot be held in contempt for

14  disobeying the Court's April 18, 2005 Order against Teknek Electronics.  THL, Kennett, and

15  Hamilton also argue that neither THL nor any company owned or controlled by it manufactures

16  anything in the United States, has any employees, bank accounts, offices, sales staff, telephone

17  or facsimile numbers, or facilities in the United States.  This argument ignores the clear language

18  of the April 18, 2005 Order enjoining Teknek Electronics and "its agents, assigns, principals,

19  employees, officers, successors in interest, trustees in bankruptcy, and anyone acting on their

20  behalf or who is involved in any joint enterprise with them" from conducting any business in the

21  United States.  First, the Order explicitly enjoins successors in interest of Teknek Electronics,

22  which the Court has already determined that THL is.  Second, the Order explicitly enjoins

23  principals and officers of Teknek Electronics, which Kennett and Hamilton were until they

24  collapsed Teknek Electronics into THL of which they are the sole owners and directors and

25  shifted its manufacturing facilities and equipment to Teknek Manufacturing, which is wholly

26  owned by THL.  Thus, rather than taking reasonable steps to ensure compliance with the Court's

27  order, Kennett and Hamilton attempted to circumvent the Court's order by shifting assets to

28  other entities and ignoring the explicit language of the April 18, 2005 Injunction, which barred

1  successors in interest such as THL and Teknek Manufacturing from doing business in the United

2  States until Teknek Electronics complied with the ordered judgment debtor examination.

3  Because of their willful defiance, THL, Kennett, and Hamilton are in contempt of the Court's

4  April 18, 2005 Injunction.

5       **C.**    **March 16, 2007 Order**

6       SDI's Contempt Motion regarding the March 16, 2007 Order seeks to hold THL, Kennett,

7  and Hamilton in contempt for violating this Order.  As with the April 18, 2005 Order, the

8  evidence demonstrates that THL, Kennett, and Hamilton did not take any reasonable steps to

9  comply with Judge Nakazato's March 16, 2007 Order, requiring THL (1) to produce Rule

10  30(b)(6) witness(es) for examination in the attorney conference room of the court on March 26,

11  2007, (2) to produce all documents requested in SDI's notice of deposition, and (3) to pay

12  sanctions to SDI for bringing its motion for a protective order without good cause.  The Court

13  agrees with Judge Nakazato's conclusion that "the exceptional and unusual nature of this case

14  warrants the deposition of THL's Rule 30(b)(6) designee to be taken here, not in Scotland."

15  Mar. 16, 2007 Order at 3 (Docket No. 507), Ex. 2 to O'Connor Decl.

16       On March 23, 2007, counsel for THL sent a facsimile letter to SDI's counsel, informing

17  him that no witnesses or documents would appear as ordered on March 26.  There is no

18  indication that THL made any effort, let alone a good faith effort, to comply with the March 16

19  Order.  In fact, THL waited until only three days before the ordered appearance to inform SDI

20  that it would not comply with the March 16 Order.  This was not the first time that THL waited

21  until the last minute to announce its intention not to appear for a noticed deposition.  On

22  February 21, 2007, THL filed a motion for a protective order only days before the originally

23  noticed February 27, 2007 Rule 30(b)(6) deposition, even though SDI had given THL ample

24  notice over a month earlier on January 17, 2007.  THL further failed to appear at the February

25  27, 2007 deposition even though no protective order had been issued.

26       On March 26, 2007, THL again failed to produce a 30(b)(6) witness for the ordered

27  judgment debtor examination.  As this failure was willful, THL is in contempt of the March 16,

28  2007 Order.

### D.    Sanctions

Understandably frustrated with the subterfuge that has thus far effectively precluded SDI from collecting its three-year-old judgment, SDI has requested fifteen different types of sanctions. While good cause exists to impose some of these requested sanctions, others are excessive.

The Court finds that the following requested sanctions seek to enjoin people who are not parties to this case, nor agents or employees of any Teknek entity and therefore declines to impose such broad sanctions on the general public: (1) a prohibition against anyone engaging in business activities in the U.S. with any of the Teknek Entities; and (2) a prohibition barring anyone from paying any monies owed to any Teknek entity or individual. Similarly, the Court finds that the following requested sanctions would be punitive and therefore, declines to impose such sanctions: (1) an order directing U.S. Customs to seize any Teknek products; and (2) the issuance of a warrant for the arrest of Kennett and Hamilton. Moreover, the request to bar Teknek from putting any information on any internet website that can be viewed from the U.S. aims to cover conduct that does not violate the April 18, 2005 Injunction. As long as the website includes a disclaimer that the prohibited products are unavailable in the United States, then the mere fact that the website is accessible in the U.S. does not violate the Injunction barring Teknek Electronics and its successors from conducting business in the U.S. until Teknek submits to a judgment debtor examination.

In determining the amount of a civil contempt sanction, the Court should consider: (1) the harm from noncompliance; (2) the probable effectiveness of the sanction; and (3) the burden the sanctions may impose on the contemnor's financial resources. *United Mine Workers*, 330 U.S. at 303-04. In this case, stringent sanctions are required given Teknek's long history of defying court orders.

First, SDI asks that the Court prohibit all Teknek Entities, Kennett, and Hamilton from engaging in any business activities within the U.S. Such a sanction is appropriate as long as the Teknek Entities, Kennett, and Hamilton are able to purge the contempt. Thus, the Court will broaden the April 18, 2005 Injunction to explicitly cover all Teknek Entities, Kennett, and

1 | Hamilton, so that they may purge the contempt and resume business in the United States by

2 | complying with the judgment debtor examination.

3 |      The following requested sanctions effectively seek to enforce THL's obligations to

4 | comply with the judgment debtor examination: (1) ordering THL, Kennett, and Hamilton to

5 | provide to SDI all documents requested in Attachment A to SDI's notice of Rule 30(b)(6)

6 | deposition of THL dated January 17, 2007; (2) ordering THL to produce its Rule 30(b)(6)

7 | witness(es); (3) ordering THL, Kennett, and Hamilton to serve a copy of the contempt order on

8 | customers, agents, representatives and licensees of each of the Teknek Entities; (4) ordering

9 | THL, Kennett, and Hamilton to provide SDI with a complete list of all current employees,

10 | officers, directors, agents, representatives, licensees of the Teknek Entities; and (5) ordering

11 | THL, Kennett, and Hamilton to provide a written accounting to SDI of all accounts receivable.

12 |      Similarly, the following requested sanctions seek information to establish the appropriate

13 | monetary sanction for THL, Kennett, and Hamilton's non-compliance with the April 18, 2005

14 | Injunction: (1) ordering THL, Kennett, and Hamilton to provide SDI with a complete list of the

15 | customers and licensees of the Teknek Entities from 2002 through 2007; and (2) ordering THL,

16 | Kennett, and Hamilton to provide SDI the total revenue received by the Teknek Entities during

17 | the period from April 18, 2005 to August 1, 2005 and from October 6, 2006 to the present.[11]

18 |      SDI further requests that the Court impose an additional fine on THL, as well as Kennett

19 | and Hamilton personally, in the amount of $52,009.79 and award SDI $4,200 to compensate SDI

20 | for the attorneys' fees incurred in bringing these contempt motions. Teknek Electronics was

21 | ordered to pay SDI the $52,009.79 amount on May 5, 2005 to compensate SDI for costs and fees

22 | incurred through April 18, 2005 in its attempts to enforce the judgment. Because neither THL,

23 | Hamilton, nor Kennett were parties to this action at this time, nor could they have violated the

24 | April 18, 2005 Injunction prior to April 18, 2005, it would be inappropriate to sanction them

25 | with these costs, which predate their party status and are unrelated to their contemptuous

26 | violation of the Court's April 18, 2005 Injunction.

27 | ———————————

28 |     [11] The case was stayed from August 1, 2005 to October 6, 2006.

1    SDI is, however, entitled to recover its fees and costs associated with bringing these
2    contempt motions.  SDI is also entitled to recover any profits derived from April 18, 2005 to
3    August 1, 2005 and from October 6, 2006 to the present through any Teknek Entity conducting
4    business in the U.S. in violation of the April 18, 2005 Injunction.
5    **IV.    DISPOSITION**
6        For the reasons set forth above, Plaintiff SDI's Motions are hereby GRANTED.  The
7    Court finds that (1) THL, Kennett, and Hamilton are in CONTEMPT for their violations of the
8    Court's April 18, 2005 Order and (2) THL is in CONTEMPT for failure to appear for the
9    judgment debtor examination.
10       IT IS HEREBY ORDERED that Teknek Electronics, Ltd., Teknek Holdings, Ltd.,
11   Teknek LLC, Teknek Manufacturing Ltd., Teknek Japan Ltd., Teknek China Ltd., Teknek
12   Howwood Ltd., Teknek Automation A/S, Teknek Asia Ltd., Teknek Europe, Ltd. and Kenham
13   LLC (collectively the "Teknek Entities"), and Jonathan Kennett and Sheila Hamilton, and their
14   agents, assigns, principals, employees, officers, successors in interest, and anyone acting on their
15   behalf or who is involved in any joint enterprise with them or any of them, or any of their agents,
16   assigns, principals, employees, officers, or successors in interest are ENJOINED from carrying
17   on any business in the United States and ENJOINED from transferring or disposing of any of
18   their assets (including monetary assets) to any other Defendant or any third party, or from
19   transferring any assets (including monetary assets) out of the United States.[12]
20   \ \ \
21   \ \ \
22   ────────────────────

23   [12] While the Court firmly believes that a narrow injunction against the Trustee and
24   his attorneys is necessary because of the extraordinary nature of the motions they have
     filed in the bankruptcy court seeking to interfere with this Court's jurisdiction and SDI's
25   ability to recover its full $3 million judgment plus approximately $1 million in interest
     from Teknek Electronics, who is not a party to the Chapter 7 proceedings, and its
26   successors, the Court recognizes the impropriety of interfering with the bankruptcy
27   court's proceedings and hopes that the bankruptcy court likewise recognizes the
     impropriety of that court interfering with this Court's proceedings by issuing the proposed
28   permanent injunction against SDI.

1      The injunctions against the Teknek Entities, Kennett, and Hamilton shall remain in full

2 force and effect until Teknek Holdings, Ltd. (a) appears for a judgment debtor examination

3 before Magistrate Judge Nakazato in accordance with the January 17, 2007 Rule 30(b)(6) notice

4 of deposition and (b) provides to SDI all documents requested in Attachment A to SDI's notice

5 of Rule 30(b)(6) deposition of Teknek Holdings, Ltd.  It is Teknek Holdings, Ltd.'s obligation to

6 schedule the judgment debtor examination for a time convenient to Magistrate Judge Nakazato

7 and SDI.  The judgment debtor examination must occur within thirty (30) days of this order.

8 Teknek Holdings, Ltd. must inform the Court within ten (10) days of this order of the scheduled

9 and mutually convenient date of the judgment debtor examination.

10      IT IS FURTHER ORDERED that THL, Kennett, and Hamilton shall, on or before

11 October 29, 2007, provide SDI with (1) a complete list of all current employees, officers,

12 directors, agents, representatives, and licensees of the Teknek Entities; (2) a written accounting

13 of all accounts receivable, including copies of invoices, agreements, and other documentation, in

14 connection with monies due to the Teknek Entities since April 18, 2005; (3) a complete list of

15 the U.S. customers and licensees of the Teknek Entities and its U.S. Distributor Tekena USA

16 from April 18, 2005 through the present; and (4) an accounting of all revenue received by the

17 Teknek Entities during the period from April 18, 2005 to August 1, 2005 and from October 6,

18 2006 to the present for any business conducted in the United States.

19      IT IS FURTHER ORDERED that THL, Kennett, and Hamilton shall serve a copy of this

20 contempt order on customers, agents, representatives and licensees of each of the Teknek

21 Entities and provide proof of service to SDI by October 29, 2007.

22 \ \ \

23 \ \ \

24 \ \ \

25 \ \ \

26 \ \ \

27 \ \ \

28 \ \ \

1    Finally, THL, Kennett, and Hamilton shall pay SDI any and all reasonable costs,
2  including attorneys' fees, incurred as a result of SDI having to bring these contempt motions to
3  compel compliance with the Court's April 18, 2005 Injunction and Judge Nakazato's March 16,
4  2007 Order.  SDI shall submit a list of those itemized costs and fees and a proposed order as to
5  the reasonableness of those costs and fees on or before October 29, 2007.  THL, Kennett, and
6  Hamilton shall have ten (10) days following the Court's approval of SDI's costs to pay those
7  costs in full to SDI.
8
9  IT IS SO ORDERED.
10  DATED: October 12, 2007
11
12                                              _David O. Carter_
13                                              DAVID O. CARTER
                                                United States District Judge
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28