**EXHIBIT 1**

Kirtlan G. Naylor     ISB 3569
James R. Stoll     ISB 7182
NAYLOR & HALES, P.C.
950 W. Bannock Street, Suite 610
Boise, Idaho 83702
Telephone: (208) 383-9511
Fax: (208) 383-9516
kirt@naylorhales.com
jrs@naylorhales.com

Daniel P. Struck     AZB 012377
*(Admitted Pro Hac Vice)*
Timothy J. Bojanowski     AZB 022126
*(Admitted Pro Hac Vice)*
Tara B. Zoellner     AZB 027364
*(Admitted Pro Hac Vice)*
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
Telephone: (480) 420-1600
Fax: (480) 420-1695
dstruck@swlfirm.com,
tbojanowski@swlfirm.com
tzoellner@swlfirm.com

Attorneys for Defendants Timothy Wengler and
Corrections Corporation of America, Inc.

# UNITED STATES DISTRICT COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| JOSHUA KELLY, JOSE PIÑA, ANDREW IBARRA, RAY BARRIOS, RANDY ENZMINGER, MICHAEL MIERA, PRISONER A, and PRISONER F, individually and on behalf of a class of all other persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TIMOTHY WENGLER, and CORRECTIONS CORPORATION OF AMERICA, INC.<br><br>Defendants. | Case No. 1:11-cv-00185-EJL<br><br>**DECLARATION OF SCOTT CRADDOCK IN SUPPORT OF DFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR AN ORDER TO SHOW CAUSE AND PLAINTIFFS' MOTION FOR RELATED DISCOVERY**<br><br>(DKT NOS. 39, 40) |

I, **SCOTT CRADDOCK**, make the following Declaration:

DECLARATION OF SCOTT CRADDOCK IN SUPPORT OF DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE AND PLAINTIFFS' MOTION FOR RELATED DISCOVERY (DKT NOS. 39, 40) - 1

1. I am over the age of 18 years and am competent to testify to, and have personal knowledge of, the matters set forth in this Declaration.

2. I have been employed by Corrections Corporation of America ("CCA") since June 2003 as CCA's Assistant General Counsel and Ethics Officer. My office is independent of operations management, and is responsible for investigating significant misconduct allegations and compliance issues that arise within CCA.

3. In November 2012, CCA was in the process of investigating unrelated workplace claims. An independent investigator, Patti Ball, was retained to lead that investigation. During the course of her investigation, a witness reported potential discrepancies in ICC shift rosters. In mid-December 2012, Ball reported the allegation to me.

4. I asked Ball to separately investigate the staffing allegation in order to determine whether it was credible. Ball investigated the claim through January 2013.

5. On January 23, 2013, Ball reported her preliminary findings to me. Based on Ball's preliminary findings, I determined that the allegation was credible and that a more thorough investigation was warranted.

6. Assistant Chief of Security Daniel Melody and Chief of Security Shane Jepsen were placed on administrative leave based on Ball's preliminary determination that they were aware of and/or involved in the conduct resulting in the shift roster discrepancies. They posed a risk to the investigation.

7. Ball reported to me that she found no evidence that either Melody or Jepsen informed their superiors, including Warden Wengler, about the roster falsification, or that Melody and Jepsen were ordered by their superiors, Warden Wengler, or CCA headquarters to falsify staffing documents.

8. On or about February 5, 2013, I retained Gary Shockley and Dewitt Fortenberry of the law firm Baker Donelson to take over the staffing investigation. Ball had planned personal and professional commitments that precluded her from committing to the time needed to conduct an investigation of the scope desired by CCA. Shockley and Fortenberry met

**DECLARATION OF SCOTT CRADDOCK IN SUPPORT OF DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE RE: CIVIL CONTEMPT & PLAINTIFFS' MOTION FOR RELATED DISCOVERY (DKT 39, 40) - 2**

with Ball to be briefed on her findings before they started their investigation. Their investigation expended more than 600 work hours.

9. As part of their investigation, Shockley and Fortenberry conducted additional interviews and reviewed relevant ICC records. Their records review focused on staffing during the night shift between April 1, 2012 and October 31, 2012. Shockley and Fortenberry reported to me that the consensus of witnesses had identified that time frame and shift as having the greatest staffing pressure and potential for undocumented hours.

10. By mid-March 2013, Shockley and Fortenberry reported to me that they were able to confirm that the night shift rosters had been completed in a way that indicated full staffing even when there were not enough staff in the institution to fully cover all mandatory posts for the full night shift. For example, a staff member working the day shift would work overtime and either begin the shift four hours early or stay four hours late, for a total of 16 hours, which was the maximum number of hours that an employee could work in one day. The staff member's name would be included on the night shift's roster even though he or she only worked 4 hours of that shift ( ).

11. Shockley and Fortenberry provided investigation status and progress reports to me and other members of CCA management at key points during their investigation, with a full report of findings to date on or about April 4, 2013.

12. Shockley and Fortenberry reported to me that the comparison of night shift rosters against Kronos time clock records for mandatory posts revealed a total of approximately 4,778 undocumented hours from April through October 2012, with the highest concentration of undocumented hours in June and July 2012 and a tapering off in the later months reviewed. In general, this was consistent with witness testimony and other evidence indicating staffing pressures were greatest during the summer months and eased in the fall and winter as new employee classes became available. Shockley and Fortenberry reported to me that the staff shortages during this seven-month period were attributed by witnesses to several things, including loss of available correctional officers due to peace officer standards and training issues,

DECLARATION OF SCOTT CRADDOCK IN SUPPORT OF DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE RE: CIVIL CONTEMPT & PLAINTIFFS' MOTION FOR RELATED DISCOVERY (DKT 39, 40) - 3

National Guard or other service duties, the addition of three new discretionary positions, call-offs, and hospital duty. Staffing pressure was particularly strong during the ▮▮▮▮ portion of the night shift, when ▮▮ personnel working overtime had to stop working.

13. On April 9, 2013, I, along with several other members of CCA management, reported the investigation findings and status to the Idaho Department of Corrections, the Attorney General's Office, and state police.

14. CCA offered to adjust its April 2013 invoice to IDOC as an indication of its good faith desire to address the roster discrepancies indicated by the April-October 2012 night shift review.

15. Since the investigation results, CCA has conducted training at ICC pertaining to reporting misconduct and ethical leadership training with management.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 24, 2013.

_____
Scott Craddock

DECLARATION OF SCOTT CRADDOCK IN SUPPORT OF DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE RE: CIVIL CONTEMPT & PLAINTIFFS' MOTION FOR RELATED DISCOVERY (DKT 39, 40) - 4