UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOSHUA KELLY, JOSE PIÑA, ANDREW IBARRA, RAY BARRIOS, RANDY ENZIMINGER, MICHAEL MIERA, PRISONER A, and PRISONER F, Individually and on behalf of a class of all other persons similarly situated, | Case No. 1:11-CV-185-S-EJL |
| | **ORDER REGARDING ATTORNEYS' FEES AND COSTS** |
| Plaintiffs, | |
| v. | |
| TIMOTHY WENGLER, and CORRECTIONS CORPORATION OF AMERICA, INC., | |
| Defendants. | |

Before the Court are the Plaintiffs' motions for attorneys' fees and costs. *See* Dkts. 96, 102.  The Court finds this matter suitable for decision without oral argument.  After considering the moving and responding papers, the Court GRANTS Plaintiffs' motions.

## I.     Factual and Procedural Background

In April 2011, Plaintiffs filed a class action complaint for declaratory and injunctive relief.  Plaintiffs alleged that the level of violence at the Idaho Correctional Center (ICC) violated Plaintiffs' and other inmates' constitutional rights.  *See* Amended Class Action Complaint ("Compl.") (Dkt. 1).  ICC is run by Corrections Corporation of America ("CCA"), a private corporation that contracted with the Idaho Department of Corrections ("IDOC") to operate ICC.  After extensive settlement talks and before class

certification, the parties agreed to settle the case and signed a Settlement Agreement. *See* Settlement Agreement (Dkt. 25 Ex. A). One of the terms of the Settlement Agreement stated that CCA would "agree to comply with the staffing pattern pursuant to CCA's contract with [IDOC]." Settlement Agreement ¶ 4.  The Settlement Agreement set out a dispute resolution procedure that included submission of disputes to this Court for resolution. *See* Settlement Agreement ¶ 15.  The Settlement Agreement was set to expire two years from its date of signature, placing its initial termination date in September 2013. *Id*. ¶ 16.  The Settlement Agreement also provided that, should this Court find a material breach of the Settlement Agreement, the Court may award attorneys' fees and costs. *Id*. ¶ 23.

In December 2012, CCA discovered possible problems with the staffing at ICC. While investigating a harassment claim, CCA found evidence that mandatory posts in ICC were going vacant. *See* Pls' Ex. 130.  On January 23, 2013, the investigator on the harassment matter raised the issue with CCA's assistant general counsel, Scott Craddock. Craddock determined the allegation of falsified staffing hours was credible, and informed IDOC and then-Warden Wengler.  CCA hired a law firm to oversee the investigation.  In March 2013, the law firm verified that falsifications had taken place.  On April 9, 2013, CCA informed state police, the attorney general, and IDOC.

On April 11, 2013, IDOC and CCA each issued a press release about the investigation.  CCA's press release stated that the corporation had "concluded an extensive internal investigation of staffing records" and "determined that during a seven-

month period last year there were some inaccuracies." CCA Press Release, Pls' Ex. 106.

The press release further stated that CCA would compensate the state for any identified

unverified staffing hours, and that "[t]he unverified hours represent a fraction of the total

staffing requirements, and there was no apparent increase in violence or other security

incidents during the period in question." *Id*. IDOC's press release, Pls' Ex. 105,

provided additional details. It noted that there were nearly 4,800 hours over seven months

for which records indicated a correctional officer was staffing a security post that was

actually vacant. IDOC announced that CCA acknowledged falsification of staffing

records and that Idaho State Police would examine the findings and evidence to review

whether a criminal investigation was justified.

In June 2013, Plaintiffs initiated contempt proceedings against CCA. *See* Motions

(Dkts. 39-40). On July 16, 2013, CCA sent Plaintiffs an email offering a settlement with

three provisions: 1) an extension of the Settlement Agreement until June 30, 2014; 2) a

specific individual named in the offer would act as independent monitor to review ICC

staffing for the remainder of the Settlement Agreement; and 3) payment of Plaintiffs'

reasonable attorneys' fees and costs incurred in moving for contempt.

*See* Reply Ex. 1.

The Court granted expedited discovery and held a contempt hearing on August 7

and 8, 2013. On September 16, 2013, the Court issued a memorandum decision and

order ("Memorandum Decision") (Dkt. 76) finding CCA in contempt, extending the

Settlement Agreement for two years, setting a system for sanctions if compliance did not improve, and implementing compliance monitoring.  The Court instructed the parties to agree to a monitor and directed Plaintiffs to submit a motion for attorneys' fees and costs pursuant to the Settlement Agreement.  *Id*. at 23.

## II.    Legal Standard

Plaintiffs state that they seek attorneys' fees under the Settlement Agreement and 42 U.S.C. § 1988, but acknowledge that the Prison Litigation Reform Act ("PLRA") limits fee awards under § 1988.  *See* Reply at 3.  CCA agrees that the PLRA's limits on attorneys' fees apply, as stated in 42 U.S.C. § 1997e(d)(1).  CCA does not appear to dispute that the normal framework under § 1988 governs this determination, as limited by the PLRA.

### a.  Attorneys' Fees Under § 1988

Under 42 U.S.C. § 1988, the Court may, in its discretion, grant a reasonable attorneys' fee as part of the costs to the prevailing party.  42 U.S.C. § 1988(b).  The lodestar formula should be used to determine a reasonable figure for an award of attorneys' fees.  A lodestar figure is calculated by "multiplying the hours spent on a case by a reasonable hourly rate of compensation for each attorney involved."  *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563 (1986).  "A 'strong presumption' exists that the lodestar figure represents a 'reasonable' fee, and upward adjustments of the lodestar are proper only in 'rare' and 'exceptional' cases."  *Jordan v.*

*Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987) (quoting *Delaware Valley*, 478

U.S. at 565).

A plaintiff is considered a prevailing party if it succeeds on any significant issue in

litigation that gives some benefit that plaintiff sought in bringing the suit.  *Hensley v.*

*Eckerhart*, 461 U.S. 424, 433 (1983).  To satisfy this requirement, the suit must have

produced a material alteration of the legal relationship between the parties.  *Buckhannon*

*Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 604

(2001).  This alteration may be the result of an enforceable judgment or comparable relief

through a consent decree.  *Farrar v. Hobby*, 506 U.S. 103, 111 (1992).

Once the Court has determined that attorneys' fees are warranted in a given case,

the Court must then assess whether the amount of fees requested is reasonable.  "In

setting a reasonable attorney's fee, the district court should make specific findings as to

the rate and hours it has determined to be reasonable."  *Gracie v. Gracie*, 217 F.3d 1060,

1070 (9th Cir. 2000) (quoting *Frank Music Corp. v. Metro-Goldwyn Mayer Inc.*, 886

F.2d 1545, 1557 (9th Cir. 1989)).  The first step the district court must take is to

"determine the presumptive lodestar figure by multiplying the number of hours

reasonably expended on the litigation by the reasonable hourly rate."  *Gracie*, 217 F.3d at

1070 (internal quotation marks and citation omitted).  Next, the district court should,

where appropriate, "adjust the 'presumptively reasonable' lodestar figure based upon the

factors listed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975), that

**Order Regarding Attorneys' Fees and Costs - 5**

have not been subsumed in the lodestar calculation."  *Id.* (internal citation and quotation marks omitted).

      b.  Limits Under the PLRA

The Prison Litigation Reform Act ("PLRA") applies to all civil rights actions by prisoners.  The PLRA limits the availability of attorneys' fees under § 1988 "[i]n any action brought by a prisoner who is confined to any jail, prison, or other correctional facility."  42 U.S.C. § 1997e(d)(1).  Under the PLRA, attorneys' fees can be awarded for post-judgment work in enforcing and monitoring the court's prior judgments.  *Webb v. Ada County,* 285 F.3d 829, 835 (9th Cir. 2002).

Under 42 U.S.C. § 1997e(d)(1), the Court may award fees to prisoners only to the extent that (1) the fees were "directly incurred in proving an actual violation of the plaintiff's rights," § 1997e(d)(1)(A); and (2) the fees are either "proportionately related to the court ordered relief for the violation" or "directly and reasonably incurred in enforcing the relief ordered for the violation," § 1997e(d)(1)(B).  *See Jimenez v. Franklin*, 680 F.3d 1096, 1099 (9th Cir. 2012).  The PLRA also states that "[n]o award of attorney's fees . . . shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18 for payment of court-appointed counsel."  42 U.S.C. § 1997e(d)(3).

**III.   Discussion**

      a.  Prevailing Party

**Order Regarding Attorneys' Fees and Costs - 6**

Plaintiffs are clearly the prevailing party for purposes of attorneys' fees.  Plaintiffs moved to find CCA in contempt for failing to meet its staffing obligations under the Settlement Agreement.  The Court found CCA in contempt and ordered relief: an extension of the Settlement Agreement for two years, appointment of an independent monitor, a set sanction amount per vacant post hour over twelve hours per month, and attorneys' fees and costs.  *See* Order (Dkt. 76).  CCA does not appear to dispute that the Plaintiffs prevailed, but rather raises objections to reasonableness and relatedness under the PLRA.  The Court addresses these concerns below.

### b.  Reasonable Rate

The parties agree that the appropriate rate for attorneys under the PLRA's limitations is $213/hour, and that the rate for paralegals is $65/hour.  *See* Motion at 7; Opp'n at 7.  CCA does dispute the use of the $65/hour rate for the work of two second-year law students.  *See* Opp'n at 7.  However, District of Idaho has already found the $65/hour rate to be appropriate for summer associates.  *See Balla v. Idaho State Bd. of Correction*, CV-81-1165-S-BLW, 2013 WL 501646 (D. Idaho Feb. 8, 2013).  The Court agrees with this assessment and sees no reason to reduce the hourly rate for second-year law students any further.  *See Nadarajah v. Holder*, 569 F.3d 906, 918 (9th Cir. 2009).

### c.  Reasonable Hours

Mr. Pevar submits billing records showing 533.9 hours and Mr. Eppink submits billing records showing 253.2 hours.  The two paralegals and two law students submit records showing a total of 174.1 hours.  The total fee amount for attorney time using the

PLRA-capped hourly rate is thus $167,652.30, and the total fee amount requested for paralegal and law student time is $11,316.50.  Mr. Pevar and Mr. Eppink request total combined costs of $16,598.13.  CCA submits a series of objections to the appropriate time calculation for lodestar purposes, which the Court addresses here.

i.   Whether Fees Should be Reduced Because of the Press Releases or the Settlement Offer

CCA argues that Plaintiffs cannot recover their full fees because they failed to prove anything beyond what CCA had already admitted in their April 2013 press release, and failed to obtain any relief beyond the settlement CCA offered:

> Here, the issue is a "material breach" of the parties' Settlement Agreement, and for Plaintiffs to obtain the entire fee award they seek, they must prove that the fee was reasonably incurred in prosecuting their contempt motion. Plaintiffs are unable to do so because Plaintiffs did not prove anything beyond what CCA had already acknowledged prior to the contempt motion and hearing and did not receive relief greater than that offered to Plaintiffs prior to the discovery phase of these proceedings. . . .
>
> Any fees incurred after CCA offered to extend the settlement agreement, retain an independent staffing monitor, and pay reasonable attorney's fees and costs incurred in bringing Plaintiffs' contempt motion, are not "reasonably incurred" or "proportionately related to the court ordered relief" because Plaintiffs (1) did not prove anything beyond what CCA had

already acknowledged prior to Plaintiffs' contempt motion and (2) did not

receive relief greater than what CCA offered prior to engaging in discovery

and the hearing.

Opp'n at 6-7.

The Court disagrees. Turning first to whether the Plaintiffs proved any facts

beyond the statements in the CCA and IDOC press releases, the Court rejects CCA's

position. The IDOC and CCA press releases stated the following facts: 1) that CCA had

"concluded an extensive internal investigation of staffing records" and "determined that

during a seven-month period last year there were some inaccuracies"; 2) that CCA would

compensate the state for any identified unverified staffing hours; 3) that "[t]he unverified

hours represent a fraction of the total staffing requirements, and there was no apparent

increase in violence or other security incidents during the period in question"; 4) that

there were nearly 4,800 hours over seven months where records indicated a correctional

officer was staffing a security post but the post was actually vacant; 5) that CCA

acknowledged falsification of staffing records; and 6) that Idaho State Police would

examine the findings and evidence to review whether a criminal investigation was

justified.

At best, these press releases could be said to show that CCA acknowledged that

4,800 recorded staffing hours were falsified. But Plaintiffs were required to prove far

more than this to merit the contempt finding. Plaintiffs had to prove by clear and

**Order Regarding Attorneys' Fees and Costs - 9**

convincing evidence not only that CCA had violated the Settlement Agreement, but also that CCA had failed to take "all reasonable steps within its power" to comply.  *See* Memorandum Decision at 6.  The Court found that CCA had ample opportunity to ensure compliance because it was aware of the problem for months.  The Court further found that the 4,800 vacant hours constituted a significant underestimate, and that posts had been empty even in the weeks before the contempt hearings.  *See id*. at 7.  Finally, the Court found that CCA's remedial efforts did not cure the violations.  *Id.*

First, Plaintiffs produced evidence showing that CCA was aware of, and should have been acting to remedy, serious staffing problems as early as 2010.  *See id*. at 8.  The evidence showed correspondence on this issue between CCA and IDOC in late 2010 and early 2011, including acknowledgment by warden Wengler that staffing issues persisted.  *See id*. at 8-9.  Testimony also showed that problems with staffing reports continued until just before the contempt hearing, and that practices deemed "unacceptable" by IDOC before the Settlement Agreement were in fact regular occurrences after the Settlement Agreement.  *See id*. at 10.  CCA acknowledged none of these facts in its press release, but the Court relied on each of them, among others, in finding CCA in contempt.

Second, the fact that the press releases acknowledged 4,800 vacant staffing hours does not justify reducing Plaintiffs' fee award.  Plaintiffs produced evidence showing that the 4,800 vacant hours were a significant underestimate for the seven-month period reviewed and that posts were frequently vacant before the seven-month period.  *See id*. at 11-12.  Plaintiffs showed that the 4,800 hour estimate covered only vacant night shift

**Order Regarding Attorneys' Fees and Costs - 10**

hours, even though CCA knew that day shifts were also left vacant.  *Id*. at 11. Testimony

also showed that even the number of vacant night shift hours could be a substantial

underestimate.  *Id*. at 11 n.10.  The Court found specifically that: "from what was

presented at the contempt hearings, it is clear that nearly two years after the Settlement

Agreement was entered into, there are still significant staff shortages that lead to

mandatory posts going unfilled."  *Id*. at 13-14.  Plaintiffs therefore proved far more than

the 4,800 hours CCA acknowledged, and the Court specifically relied on this additional

evidence in holding CCA in contempt.

Plaintiffs also proved that Warden Wengler and CCA itself was responsible for the

staffing shortages.  The Court noted that CCA had ample evidence of the staffing

problem after the Settlement Agreement, yet did nothing to remedy the problem.  CCA

officials, including Wengler, acknowledged this fact in their hearing testimony.  *Id*. at 15.

Neither press release admitted or alluded to this level of knowledge or culpability.

Overall, then, it cannot be seriously argued that Plaintiffs proved nothing more

than what the CCA and IDOC press releases already stated.  Plaintiffs' investigations

produced significant and crucial evidence of the extent of the staffing violations, the

length of time the violations had been occurring, and the knowledge and notice that CCA

and Warden Wengler had of the violations.  Plaintiffs met the heavy burden of proving

civil contempt and produced exemplary results for their clients.  The Court thus declines

to reduce Plaintiffs' requested fees on this basis.

**Order Regarding Attorneys' Fees and Costs - 11**

The Court similarly rejects CCA's argument that its settlement offer would have given Plaintiffs the same relief that they eventually achieved.  The settlement offer provided an extension of the settlement agreement until June 30, 2014 (roughly nine months longer than the original termination date), a specific independent monitor to "review ICC staffing" for the remainder of the Settlement Agreement term, and an offer to pay reasonable attorneys' fees.  Plaintiffs were already entitled under the Settlement Agreement to seek reasonable fees in the event of breach, however, and so CCA's offer to pay reasonable fees was duplicative at best.  Plaintiffs achieved greater relief on both other issues included in the settlement offer: the Settlement Agreement was extended for a full two years, and an independent monitor agreeable to both parties and accountable to the Court was appointed.  Furthermore, Plaintiffs achieved relief beyond these three issues: Plaintiffs obtained a finding of contempt against CCA, a Court order mandating compliance with the remedies ordered, a sanctions structure designed to encourage full compliance with the Settlement Agreement, and extensive factual findings showing repeated and long-term breaches of the staffing terms of the Settlement Agreement.  This relief is unquestionably far beyond the benefits that Plaintiffs would have gained from accepting CCA's offer, particularly given that Plaintiffs had legitimate concerns about CCA's willingness to accurately review and correct its staffing.

Therefore, the Court declines to reduce Plaintiffs' fee award either because they failed to achieve relief beyond the settlement offer or because they proved nothing beyond CCA's earlier admissions.  Plaintiffs efforts at the contempt hearing were fruitful

far beyond these modest limits, and the Court finds those efforts were entirely
"reasonably incurred" and "proportionately related to the court ordered relief" under 42
U.S.C. § 1997e(d)(1)(B).

To the extent that CCA argues that Plaintiffs are not entitled to fees because they
did not prove specifically that violence levels increased at ICC as a result of any breach
of the Settlement Agreement, the Court also rejects this argument.  The Court discussed
in its Order why it is unnecessary for Plaintiffs to show that violence increased as a result
of the staffing violations.  Memorandum Decision at 18-19.  There is no need to expound
on these issues further, and the Court declines to reduce Plaintiffs' fees on this basis.

ii.   Specific Objections

CCA also makes specific objections to particular parts of Plaintiffs' claim for fees,
which the Court now addresses in turn.

1.   Unnecessary, Duplicative, Vague, etc.

First, CCA claims that certain claimed fees are unnecessary, duplicative, and
vague.  CCA details these 113 objections in Exhibit B to its Opposition.  The Court
addresses them in groups by topic.

a.   Objections 1-3, 6, 16, 23-24, 32, 62, 65, 79, 81-82, 89,
108: Work Associated with ICC Staff and Inmates

CCA objects to a variety of activities associated with individuals CCA argues have
"no apparent role in this litigation."  All of these time entries appear to relate to either
CCA staff or ICC inmates regarding the staffing situation.  The Court interprets CCA's

objection to be that because these individuals did not testify or were not cited in the

Court's Order, any fees for efforts expended on interviewing these individuals and

drafting declarations for them were not "directly and reasonably incurred" under

§ 1997e(d).  The Court disagrees.  A full investigation of the staffing complaints was

absolutely necessary to develop an appropriate strategy for the contempt hearing, which

was limited in time and so could not accommodate all witnesses.  It cannot be true,

however, that interviewing a reasonable number of potential witnesses and gathering data

from those witnesses is not reasonable and directly related to presenting the strongest

case possible.  Were these witnesses clearly peripheral or associated with a failed claim,

the Court would hold differently.  But, where only one claim is asserted and the witnesses

are all individuals able to directly comment on the facts underlying that claim, the Court

sees no reason to deny fees on this basis.  These objections are therefore denied, and

Plaintiffs may recover these fees.

   The Court finds the same to be true for the objections to work associated with

Susan Fry, a former CCA corrections officer.  To diligently investigate the contempt

claim, Plaintiffs had to locate and interview former officers to determine the extent of the

staffing problems.  There is no evidence that any of these officers could not be expected

to have pertinent information, or could not be expected to materially further the

investigation.  The fact that not all of the officers were able to testify does not render

work spent on their declarations or interviews "unreasonable" or not "directly related."

**Order Regarding Attorneys' Fees and Costs - 14**

      b.  Objections 4-5, 7, 15-16, 33-38, 93, 97, 106-07, 109-13: Clerical Tasks

CCA objects to a series of tasks as clerical in nature.  First, the Court notes that several of these objections are for fee entries completed by paralegals or law students.  It seems to the Court that paralegals and law students are entirely appropriate individuals to complete these tasks, including formatting, correspondence, and taking notes.  Similarly, time that counsel spent corresponding with opposing counsel, plaintiffs, and possible witnesses is entirely within the purview of a lawyer's tasks, and CCA has failed to rebut this supposition.  *See Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1079 (N.D. Cal. 2010). To the extent that CCA objects to tasks that might be performed by clerical staff in a large law firm, including arranging travel and preparing exhibits, the Court finds these tasks reasonable for Plaintiffs' counsel to perform.  Mr. Pevar and Mr. Eppink submitted supplemental declarations stating that they have only limited support from paralegal staff and work essentially as sole practitioners.  *See* Reply Exs. 2, 3.  It is therefore entirely appropriate for Mr. Pevar and Mr. Eppink to perform some clerical work.  The Court will not punish them for the lack of resources that often accompanies nonprofit legal work. *See Parks v. D.C.*, 895 F. Supp. 2d 124, 133 (D.D.C. 2012).  CCA's objections on this basis are therefore denied.

      c.  Objections 21, 28, 50-61, 66, 68-69, 73-78, 80, 83, 86-87, 90-91, 97: Vagueness

CCA makes several objections to specific time entries it claims are vague.  The Court agrees with CCA regarding objections 50-61 (4 hours), 66 (0.2 hours), 69 (0.2

hours), 78 (0.2 hours), 87 (0.2 hours), and 90 (0.7 hours).  The Court therefore reduces the fees billed for Mr. Eppink by 5.5 hours.  The Court denies the other vagueness objections and finds those entries sufficiently specific to warrant fees.

### d.  Objections Regarding Jaune Sonnier

CCA objects to a variety of fee entries associated with the testimony of Jaune Sonnier.  The Court relied directly on Sonnier's testimony in its contempt order.  *See* Memorandum Decision at 12.  The Court thus finds counsel's efforts in interviewing and preparing Sonnier's testimony to be entirely reasonable and directly related to the relief received.  These objections are denied.

### e.  Objections to Time Spent Briefing Fee Enhancement

CCA further objects to time spent researching and obtaining documentation related to the request for a multiplier.  The Court addresses these arguments below in its discussion of the propriety of a multiplier in this case.

### f.  Fees for Claims Not Advanced

CCA objects to several fee entries related to claims not asserted as remedies for the breach, particularly the question of possible substitution of the new warden into the suit.  In the same way that it is reasonable to investigate witnesses who do not ultimately testify, it seems entirely reasonable to the Court to investigate possible avenues of relief and claims that are not ultimately viable.  CCA does not show that it was unreasonable to investigate this issue, and the Court finds no other basis on which to disagree with Plaintiffs that this was time well spent.  CCA cites authority suggesting that if the Court

believed these efforts were spent on irrelevant or frivolous matters, it could exclude the associated fees. *See Washington State Dep't of Transp. v. Washington Natural Gas Co., Pacificorp*, 59 F.3d 793, 806 (9th Cir. 1995); *Desena v. Lepage*, 847 F. Supp. 2d 207, 213 (D. Me. 2012). The Court finds that the fees in this case, however, were reasonable and appropriate under the circumstances. The Court declines to reduce fees on this basis.

### 2.   Duplicative Deposition Fees

CCA challenges fees incurred when both of Plaintiffs' attorneys attended depositions. A Court may reduce fees if it finds them to be duplicative or excessive. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). In this case, however, it seems clear to the Court that the compressed litigation schedule and volume of discovery in this case justified using two attorneys at the depositions. Mr. Pevar and Mr. Eppink had limited resources and limited time, and so it was reasonable for both to attend the depositions. This is especially true in light of their limited support staff. The Court therefore declines to reduce the fee award on this basis.

### 3.   Expenses not Sufficiently Supported

CCA challenges Mr. Pevar and Mr. Eppink's costs and expenses as insufficiently supported. Mr. Pevar and Mr. Eppink submitted supplemental declarations, including receipts, which satisfy the Court that the expenses requested are reasonable and adequately documented. The Court therefore declines to reduce the requested expenses on this basis.

**Order Regarding Attorneys' Fees and Costs - 17**

4.  Assorted Additional Objections

CCA's remaining objections are narrow and specific to several individual fee entries.  Several objections for block billing are unconvincing, as the entries are sufficiently detailed to give an accurate sense of the tasks performed during the time billed.  *See Pierce v. Cnty. of Orange*, 905 F. Supp. 2d 1017, 1030 (C.D. Cal. 2012).  After reviewing and considering the remaining objections, the Court finds them unpersuasive and declines to reduce fees on any of the grounds requested.

iii.  Time for Fee Application

CCA objects to Plaintiffs' request for reimbursement for time spent requesting fees to the extent that the fee request is unsuccessful, and to the extent that it requests a multiplier.  As noted above, the Court will address below the fee request based on the briefing for a multiplier.  Plaintiffs agree that fees requested for time spent briefing the multiplier issue should be denied if no multiplier is granted.

iv.  Conclusion Regarding Reasonable Hours

After reviewing Plaintiffs' timekeeping records, the Court is satisfied that the hours billed are reasonable and appropriate in this case.  The Court declines to reduce the hours beyond the small reduction for vagueness of several individual time entries, as discussed above.

d.  Presumptive Lodestar

The presumptive lodestar calculation (including for the moment all fees claimed for briefing the attorneys' fees issue) is as follows:

Order Regarding Attorneys' Fees and Costs - 18

|  | **Hours** | **PLRA Rate** |  | **Total** |  |
|---|---|---|---|---|---|
| **Litigation Fees:** | | | | | |
| Stephen Pevar | 533.9 | $ | 213.00 | $ | 113,720.70 |
| Richard Eppink | 247.7 | $ | 213.00 | $ | 52,760.10 |
| Zachary Kohl | 78.1 | $ | 65.00 | $ | 5,076.50 |
| Jeremy Shafer | 19.8 | $ | 65.00 | $ | 1,287.00 |
| Ingrid Andrulis | 68 | $ | 65.00 | $ | 4,420.00 |
| Andrew Masser | 8.2 | $ | 65.00 | $ | 533.00 |
| | | | | | |
| **Fees Reply Brief:** | | | | | |
| Stephen Pevar | 50.8 | $ | 213.00 | $ | 10,820.40 |
| Richard Eppink | 12.4 | $ | 213.00 | $ | 2,641.20 |
| | | | Total fees: | $ | 191,258.90 |
| **Costs:** | | | | | |
| Stephen Pevar | | | | $ | 14,619.45 |
| Richard Eppink | | | | $ | 1,978.68 |
| | | | Total costs: | $ | 16,598.13 |
| | | | **Total Fees and Costs:** | **$** | **207,857.03** |

e.  Whether a Lodestar Enhancement is Appropriate

Plaintiffs' counsel requests a 2.0 multiplier.  A fee applicant bears the burden of proving that a fee enhancement is necessary, and must produce "specific evidence" supporting the award.  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010).

"[I]n appropriate cases, the district court *may* adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in *Kerr v. Screen Extras Guild, Inc. . . .*"  *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1158 (9th Cir. 2002) (quoting *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993)).  The *Kerr* factors are: 1) the time and labor required; 2) the novelty and difficulty of the questions involved; 3) the skill requisite to perform the legal service properly; 4) the preclusion of other

employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the undesirability of the case; 11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Kerr*, 526 F.2d at 70. "The court need not consider all . . . factors, but only those called into question by the case at hand and necessary to support the reasonableness of the fee award." *Cairns*, 292 F.3d at 1158 (citing *Kessler v. Assocs. Fin. Servs. Co. of Hawaii,* 639 F.2d 498, 500 n.1 (9th Cir. 1981)).

In adjusting an award, however, the district court must focus on the *Kerr* factors "that are not already subsumed in the initial lodestar calculation." *Morales v. City of San Rafael*, 96 F.3d 359, 363-64 (9th Cir. 1996) *opinion amended on denial of reh'g,* 108 F.3d 981 (9th Cir. 1997). Factors one through four and six are considered subsumed in the lodestar calculation. *Id*. at 364 n.9. Those *Kerr* factors determined not subsumed in the lodestar calculation therefore include: "(5) the customary fee, . . . (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Id*.; *Kerr,* 526 F.2d at 70; *see Graves v. Arpaio*, 633 F. Supp. 2d 834, 842 (D. Ariz. 2009) *aff'd,* 623 F.3d 1043 (9th Cir. 2010).

**Order Regarding Attorneys' Fees and Costs - 20**

A lodestar amount generally may not be enhanced on the basis of "the novelty and complexity of a case," or "the quality of an attorney's performance."  *Perdue,* 559 U.S. at 553.  Similarly, because the Supreme Court has held that the outcome or result of the suit is generally subsumed in the lodestar calculation, this is normally not an appropriate basis for enhancement.  *See Blum v. Stenson*, 465 U.S. 886, 900 (1984).  Only in cases of "exceptional success" should such a consideration warrant an upward adjustment.  *Id*. (quoting *Hensley*, 461 U.S. at 435).

Plaintiffs' counsel argue that this multiplier is appropriate for three essential reasons: 1) it is difficult for prisoner plaintiffs to find qualified counsel to take cases for which only declaratory relief or injunctive relief might be available because of the low compensation; 2) the PLRA's fee cap undervalues Plaintiffs' counsel significantly; and 3) Plaintiffs achieved extraordinary results.  CCA responds that: 1) attorneys routinely bring prisoner lawsuits; 2) the statutory maximum hourly rate under the PLRA prevents any fee enhancement that brings the hourly rate over the maximum; 3) Plaintiffs did not have difficulty getting counsel in this case; 4) the prevailing rate of attorneys is not as high as Plaintiffs claim; and 5) the results in this case were not sufficiently "extraordinary" to warrant a fee enhancement.

i.   Extraordinary Results and Undervaluing Counsel

The Court considers the arguments for a multiplier based on extraordinary results and on undervaluing counsel together.  The Supreme Court recently addressed the extent to which extraordinary results may justify a fee enhancement.  *See Perdue* 559 U.S. at

**Order Regarding Attorneys' Fees and Costs - 21**

554. The *Perdue* Court treated the "quality of an attorney's performance" and "the results obtained" as one factor, determining that "superior results are relevant only to the extent it can be shown that they are the result of superior attorney performance." *Id*. Circumstances in which attorney performance can justify enhancement are "'rare' and 'exceptional,' and require specific evidence that the lodestar fee would not have been 'adequate to attract competent counsel.'" *Id*. (quoting *Blum*, 465 U.S. at 897). The only such "rare and exceptional" circumstance detailed by the *Perdue* Court that is relevant here is where "the method used in determining the hourly rate employed in the lodestar calculation does not adequately measure the attorney's true market value, as demonstrated in part during the litigation." *Id*. at 554-55. If the district court does find an enhancement appropriate, it "should adjust the attorney's hourly rate in accordance with specific proof linking the attorney's ability to a prevailing market rate." *Id*. at 555.

Plaintiffs' counsel achieved excellent results for their clients under extreme time pressure and with very limited resources. Counsel's lodestar hours do not fully reflect this success because the quality of the work that produced these results is underrepresented in the hourly fee. Plaintiffs uncovered substantial evidence of noncompliance with the Settlement Agreement and long-term knowledge of that noncompliance by high-ranking individuals at CCA. Plaintiffs successfully obtained a contempt finding and meaningful remedies for their clients. Plaintiffs submit affidavits from an attorney with comparable experience to that of Mr. Pevar stating that the attorney's normal hourly rate is approximately $435/hour. *See* Sinclair Decl. ¶ 3.

Plaintiffs also submitted an affidavit from an attorney with less experience than Mr.

Pevar stating that the attorney was awarded fees in non-PLRA § 1983 litigation in the

same district at a rate of $300/hour.  *See* Wood Decl. ¶ 6.  Mr. Eppink's declaration states

that he requested fees in a non-PLRA § 1983 case in the same district based on a

$275/hour rate.  *See* Eppink Decl. ¶ 19.  Plaintiffs also provide affidavits stating that the

PLRA-mandated hourly rate is too low to attract competent counsel to these cases.  *See*

Sinclair Decl. ¶ 4; Wood Decl. ¶¶ 2-4.  The Court does not find CCA's argument that the

PLRA-mandated hourly rate is the market rate in light of CCA's counsel's "blended rate"

of $198/hour.  It is not clear how a "blended rate" that is otherwise unexplained rebuts

evidence directly on point of the market hourly rate for an experienced and competent

attorney.  The Court therefore finds this evidence unconvincing and tangential, and

declines to use it as a basis for measuring either Mr. Eppink's or Mr. Pevar's market

value as an attorney.

CCA argues that the PLRA's 150% cap on the base hourly rate is a maximum cap

on all fees for this matter, suggesting that no multiplier may be granted.  The Court

disagrees.  Judges in at least one district have enhanced fees despite the PLRA's limits in

order to reasonably compensate counsel.  *See Ginest v. Bd. of Cnty. Comm'rs of Carbon

Cnty., WY*, 423 F. Supp. 2d 1237, 1241 (D. Wyo. 2006) (granting a 25% multiplier

despite the PLRA's cap on hourly rate); *Skinner v. Uphoff*, 324 F. Supp. 2d 1278, 1287

(D. Wyo. 2004) (same).  This does not appear to run afoul of the plain language of

§ 1997e(d), which states only that "[n]o award of attorney's fees . . . shall be *based on* an

hourly rate greater than 150 percent of the hourly rate established under section 3006A of

Title 18 for payment of court-appointed counsel."  42 U.S.C. § 1997e(d)(3) (emphasis

added).  This suggests not that the average hourly rate of the final fee cannot exceed an

overall cap, but rather that the initial lodestar calculation cannot use, or be "based on," an

hourly rate that starts above the PLRA cap.  Where a fee award is multiplied upward to

account for factors not subsumed in the lodestar calculation, it is still "based on" the

initial lodestar fee rate; the fee is increased from that base point to ensure reasonable

compensation of counsel in those very narrow circumstances when the lodestar

undervalues counsel.  To read the statute as setting an absolute maximum arguably

eliminates the well-established enhancement framework in § 1988 litigation, a drastic

step.  The Court therefore finds no basis in the PLRA to categorically deny any

enhancement multiplier.

        The Court therefore finds a multiplier appropriate to reasonably compensate

counsel for extraordinary performance yielding extraordinary results.  Plaintiffs have

submitted evidence suggesting that Mr. Pevar's market billing rate is roughly $435/hour,

and that Mr. Eppink's rate is more closely estimated between $300/hour and $275/hour.

*See United Steelworkers of America v. Phelps Dodge Corp.,* 896 F.2d 403, 407 (9th Cir.

1990) ("Affidavits of the plaintiff's attorney and other attorneys regarding prevailing fees

in the community, and rate determinations in other cases, particularly those setting a rate

for the plaintiff's attorney, are satisfactory evidence of the prevailing market rate.").  The

Court accordingly grants a 2.0 multiplier for Mr. Pevar's hours and a 1.3 multiplier for

Mr. Eppink's hours.  The Court grants Plaintiffs their fees incurred in briefing the fee

request and reply, including the enhancement issue.  *See Camacho v. Bridgeport Fin.,*

*Inc.*, 523 F.3d 973, 981 (9th Cir. 2008).

ii.   Risk and Incentives to Obtain Competent Counsel

Plaintiffs also argue that a multiplier is appropriate in light of the risk in taking

contingent civil rights cases and the need to give other counsel incentives to take similar

cases.  A district court may enhance a fee award when "payment for attorney's services is

contingent upon success and the attorney bears the risk of nonpayment in case of failure."

*Bernardi v. Yeutter*, 951 F.2d 971, 975 (9th Cir. 1991) (internal citation and quotation

marks omitted).  This type of enhancement is appropriate if "two prerequisites" are met:

"First, . . . without an adjustment for risk the prevailing party would have faced

substantial difficulties in finding counsel in the local or other relevant market," and,

"[s]econd, any enhancement for contingency must reflect the difference in market

treatment of contingent fee cases *as a class,* rather than . . . the riskiness of any particular

cases."  *Id*. (quoting *Fadhl v. City and County of San Francisco*, 859 F.2d 649, 650 (9th

Cir. 1988)) (internal citations and quotation marks omitted).

The Court finds persuasive Plaintiffs' arguments that this case warrants an

enhancement under this theory.  Plaintiffs' counsel submits declarations supporting its

assertions that the limited fees available for injunctive and declaratory relief prison

lawsuits prevent private attorneys from accepting those cases, as a class.  *See, e.g.*, Wood

Decl. ¶¶ 2-5; Belodoff Decl. ¶¶ 8-10.  Although CCA provides an affidavit stating that

many lawsuits are filed on behalf of prisoners, it does not specify whether these lawsuits request only injunctive relief.  *See* Struck Decl., Opp'n Ex. A.  Plaintiffs' affidavits state that it is very difficult to find counsel willing to take such cases because the cases are complex, labor-intensive, have a significant risk of non-payment, and are then only compensated at a reduced rate.  The Court credits these affidavits, particularly because CCA presents no direct rebuttal.  The Court is also unconvinced by CCA's argument that the no enhancement is warranted because counsel in this action were already counsel of record.  Plaintiffs' affidavits make clear that plaintiffs seeking counsel for injunctive relief lawsuits face significant difficulty in finding such counsel, and that current counsel were likely the only attorneys willing to accept their case.  *See Gomez v. Gates*, 804 F. Supp. 69, 78 (C.D. Cal. 1992).  The Court similarly finds CCA's arguments regarding the PLRA hourly fee cap unconvincing in this context for the reasons stated above.

The Court finds that the multiplier amounts set out in the previous section are sufficient to serve the interests articulated here.  This analysis thus serves as an alternate sufficient basis for the same fee enhancement granted above.  As discussed above, the Court awards fees for time Plaintiffs' counsel spent briefing the fees issue, including the multiplier.

f.  Final Calculation

Based on the foregoing, the Court awards attorneys' fees and costs as follows:

|  | Hours | PLRA Rate | Multiplier | New Rate | Total |
|---|---|---|---|---|---|
| **Fees (total):** | | | | | |
| Stephen Pevar | 584.7 | $ 213.00 | 2 | 426 | $ 249,082.20 |
| Richard Eppink | 260.1 | $ 213.00 | 1.3 | 276.9 | $ 72,021.69 |
| Zachary Kohl | 78.1 | $ 65.00 | | | $ 5,076.50 |
| Jeremy Shafer | 19.8 | $ 65.00 | | | $ 1,287.00 |
| Ingrid Andrulis | 68 | $ 65.00 | | | $ 4,420.00 |
| Andrew Masser | 8.2 | $ 65.00 | | | $ 533.00 |
| | | | | Total fees: | $ 332,420.39 |
| | | | | | |
| **Costs:** | | | | | |
| Stephen Pevar | | | | | $ 14,619.45 |
| Richard Eppink | | | | | $ 1,978.68 |
| | | | | Total costs: | $ 16,598.13 |
| | | | | | |
| | | | | **Total Fees and Costs:** | **$ 349,018.52** |

## IV.  Disposition

After considering the totality of the record and the arguments by counsel, the Court awards Plaintiffs' counsel $349,018.52 in fees and costs. The Court finds this award is reasonable and appropriate based on its analysis. Plaintiffs' Motions (Dkts. 96, 102) are GRANTED.

DATED this 20th day of February, 2014.

_David O. Carter_
DAVID O. CARTER, United States District Judge
for the Central District of California
Sitting by Special Designation

*Order Regarding Attorneys' Fees and Costs - 27*